CHARLOTTE HOUSING AUTHORITY, Plaintiff v. ROXIEANNE PATTERSON, Defendant

No. 9326DC1269

(Filed 7 November 1995)

**Housing, and Housing Authorities and Projects § 23 (NCI4th)— public tenant—shooting by son—no personal fault of tenant—eviction improper**

Under 42 U.S.C. § 1437d(1)(5), good cause for eviction does not exist when a public housing tenant is not personally at fault for a breach of the criminal activity termination provision of a public housing lease by a member of the tenant's household. Where the trial court found that defendant had no knowledge of a shooting by her son until after it occurred, that the gun used in the shooting was not kept in defendant's home and did not belong to anyone in her household, that defendant had no reason to know that her son might commit such an act, and that plaintiff itself investigated defendant's son's suitability before consenting to add him back to defendant's lease, then defendant was not personally at fault in the shooting, and her eviction based on the shooting would not be authorized by statute.

**Am Jur 2d, Housing Laws and Urban Redevelopment §§ 33, 34.**

Appeal by plaintiff from judgment entered 14 September 1993 by Judge Philip F. Howerton, Jr., in Mecklenberg County District Court. Heard in the Court of Appeals 26 September 1994.

This case arises from a summary ejectment action filed by plaintiff, Charlotte Housing Authority ("CHA"), against defendant, Roxieanne Patterson, who is a long-time resident of Fairview Homes, a public housing development managed by plaintiff. On 12 May 1992, defendant was notified that her lease was being terminated for breach of certain of its provisions. As required by the United States Housing

Act of 1937, 42 U.S.C. § 1437 *et seq.*, defendant's lease contained the following provisions:

[16]F. I, all members of my household, our guests or visitors, and other persons under control of household members . . . shall not engage in criminal activity . . . including . . . firing a weapon . . . on CHA property . . ., and such activity shall be cause for termination of this lease.

\* \* \*

[16]G. I, all members of my household, our guests or visitors, and other persons under control of household members . . . while on any CHA property, shall not without justification or recklessly or negligently: carry on or about their person a deadly weapon; shoot, fire, explode, throw or otherwise discharge a deadly weapon . . . or inflict injury to any person or damage to any property through use of a deadly weapon. A deadly weapon means any . . . gun . . . .

\* \* \*

[20]B. The CHA can end my lease only for good cause (reason). Good cause can mean different things. It means breaking the rules of the lease . . . . The CHA may also evict me if I, members of my household, our guests or visitors, and other persons under our control . . . disturb, threaten, or cause harm to other residents . . . I also understand that if I, members of my household, our guests or visitors, and other persons under our control, engage in criminal activity . . . on or near CHA property, the CHA may end my lease.

As grounds for termination, plaintiff cited the following occurrences: (1) In July 1988, defendant's son, Anthony Givens, was arrested for larceny of an auto; (2) In March 1990, Anthony was arrested for breaking and entering and possession of stolen goods; (3) In May 1990, defendant's son, Jonathan Givens, was arrested for communicating threats; (4) In May 1991, Anthony was arrested for giving fictitious information to a police officer and having no operator's license; and (5) On 23 April 1992, Jonathan was charged with the murder of George Forte, assault with a deadly weapon on Barbara Forte, discharging a firearm into an occupied dwelling, and possession of a deadly weapon on plaintiff's property. At the time of termination, the lease listed defendant, defendant's two daughters, ages 16 and 18 at the time of trial, and defendant's son Jonathan, age 19 at the time of

trial, as members of defendant's household. Jonathan had been taken off the lease in 1988 and resided in group homes and with an aunt for a period of time. Plaintiff consented to add Jonathan back to the lease in August 1991 following an investigation of his suitability. Defendant had removed Anthony's name from her lease in 1989.

After defendant did not vacate the premises as demanded by plaintiff, plaintiff filed this summary ejectment action in small claims court alleging that defendant had refused to surrender the premises and was a hold over tenant, and that plaintiff was entitled to immediate possession. The magistrate dismissed the action. Plaintiff appealed to the District Court where, at trial, plaintiff's counsel conceded that termination of defendant's lease was based solely on Jonathan's actions on 23 April 1992. Plaintiff included the other allegations in the notice of termination and subsequent complaint in summary ejectment for the sole purpose of showing a history of misconduct, warnings, and counseling in anticipation of defendant's claim of a so-called "personal fault" defense.

The court heard testimony from defendant and three witnesses for plaintiff primarily concerning the shooting by Jonathan, his status as a member of defendant's household, certain provisions of defendant's lease with plaintiff, and prior communications between plaintiff and defendant relating to the behavior of defendant's sons and her duties pursuant to the lease. Plaintiff also introduced documentary evidence including the lease between plaintiff and defendant, the letter purporting to terminate defendant's lease, and a document noting a conference agreement between plaintiff and defendant. At the close of plaintiff's evidence, defendant moved to dismiss the complaint under Rule 41(b) of the N.C. Rules of Civil Procedure.

The trial court found as fact that defendant had no knowledge of the shooting until after the incident occurred. The trial court further found that the gun used in the shooting was not kept in defendant's home, did not belong to anyone in her household, that defendant had no reason to know that her son might commit such a violent act, and that defendant was not personally at fault for the shooting by her son. The trial court then ruled that under 42 U.S.C. § 1437 *et seq.* a public housing tenant may not be evicted and thereby deprived of her housing entitlement when she is not personally at fault for a breach of the lease by a member of her household. The trial court found that holding defendant strictly liable for unforeseeable criminal acts committed by her son outside her presence is contrary to the federal act. As

a result, the trial court held there was not good cause to terminate the lease, and granted defendant's motion to dismiss the complaint with prejudice. Plaintiff appeals.

*Robinson, Bradshaw & Hinson, P.A., by Robert C. Sink and Edward F. Hennessey, IV, for plaintiff-appellant.*

*Legal Services of Southern Piedmont, Inc., by Theodore O. Fillette, III, Linda S. Johnson, and Cindy M. Patton, for defendant-appellee.*

*Constance A. Wynn for Department of Housing and Urban Development, amicus curiae.*

MARTIN, John C., Judge.

The sole issue in this case is whether the trial court was correct in concluding that under 42 U.S.C. § 1437d(1)(5) a public housing tenant may not be evicted when she was not personally at fault for a breach of the lease by a member of her household. For reasons stated below, we affirm the decision of the trial court.

North Carolina law requires eviction of residential tenants to be accomplished through court action. N.C. Gen. Stat. § 42-25.6 (1994). In federally subsidized housing cases, the court decides whether applicable rules and regulations have been followed, and whether termination of the lease is permissible. *Apartments, Inc. v. Williams*, 43 N.C. App. 648, 260 S.E.2d 146 (1979), *disc. review denied*, 299 N.C. 328, 265 S.E.2d 395 (1980).

The lease provisions at issue in this case were adopted pursuant to the United States Housing Act, 42 U.S.C. § 1437 *et seq.*, as amended by the Anti-Drug Abuse Act of 1988, Pub. L. 100-690, and the 1990 Cranston-Gonzalez Affordable Housing Act, Pub. L. 101-625. The statute requires that:

Each public housing agency shall utilize leases which—

\* \* \*

(5) provide that any criminal activity that threatens the health, safety, or right to peaceful enjoyment of the premises by other tenants or any drug-related criminal activity on or near such premises, engaged in by a public housing tenant, any member of the tenant's household, or any guest or other person under the tenant's control, shall be cause for termination of tenancy . . . .

42 U.S.C. § 1437d(1)(5).

The United States Supreme Court has stated "that the starting point for interpreting a statute is the language of the statute itself. Absent a clearly expressed legislative intention to the contrary, that language must ordinarily be regarded as conclusive." *Consumer Product Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108, 64 L.Ed.2d 766, 772 (1980). Even if "the plain language of [the] statute appears to settle the question," a Court still looks "to the legislative history to determine . . . whether there is 'clearly expressed legislative intention' contrary to [the statutory] language which would require [the Court] to question the strong presumption that Congress expresses its intent through the language it chooses." *INS v. Cardoza-Fonseca*, 480 U.S. 421, 432 n.12, 94 L.Ed.2d 434, 448 n.12 (1987).

Similarly, this Court has stated:

When the language of a statute is clear and without ambiguity, "there is no room for judicial construction" and the statute must be given effect in accordance with its plain and definite meaning. When a literal interpretation of the statutory language yields absurd results, however, or contravenes clearly expressed legislative intent, "the reason and purpose of the law shall control and the strict letter thereof shall be disregarded."

*Avco Financial Services v. Isbell*, 67 N.C. App. 341, 343, 312 S.E.2d 707, 708 (1984) (quoting *Williams v. Williams*, 299 N.C. 174, 179-80, 261 S.E.2d 849, 853 (1980)). *See also Buck v. Guaranty Co.*, 265 N.C. 285, 290, 144 S.E.2d 34, 37 (1965) ("The 'primary rule of construction of statutes is to ascertain and declare the intention of the legislature, and carry such intention into effect to the fullest degree.' ") (citation omitted).

In its report accompanying the Cranston-Gonzalez National Affordable Housing Act, the 1990 amendment to 42 U.S.C. § 1437d(1)(5), the congressional committee stated:

The Committee bill would amend a provision of the U.S. Housing Act that was added by the Anti-Drug Abuse Act of 1988. This provision makes criminal activity grounds for eviction of public housing tenants *if that action is appropriate in light of all the facts and circumstances*. This language was limited to criminal activity on or near the public housing premises.

This Section would make it clear that criminal activity, including drug related criminal activity, can be cause for eviction

only if it adversely affects the health, safety, and quiet enjoyment of the premises. The Committee anticipates that each case will be judged on its individual merits and will require the wise exercise of humane judgment by the PHA and the eviction court. *For example, eviction would not be the appropriate course if the tenant had no knowledge of the criminal activities of his/her guests or had taken reasonable steps under the circumstances to prevent the activity.*

S. Rep. No. 316, 101st Cong., 2d Sess. 179 (1990), *reprinted in* 1990 U.S.C.C.A.N. 5763, 5941 (emphasis added). The 1990 amendments also addressed criminal activity as cause for termination of a tenant's Section 8 assistance (a federal subsidy provided to tenants in private housing). 42 U.S.C. § 1437f(d)(1)(B)(iii) (Supp. 1993). The committee report similarly provided:

Termination of tenancy.—The bill includes language to permit evictions from Section 8 Existing Housing for criminal activity, including drug related criminal activity. It is based on a similar provision contained in the Anti-Drug Abuse Act of 1988 governing public housing leases . . . . The Committee assumes that *if the tenant had no knowledge of the criminal activity or took reasonable steps to prevent it, then good cause to evict the innocent family members would not exit* [sic].

S. Rep. No. 316, 101st Cong., 2d Sess. 179 (1990), *reprinted in* 1990 U.S.C.C.A.N. 5763, 5889 (emphasis added).

With no mention of personal fault, the statute and lease at issue in this case provide that criminal activity by a member of a tenant's household is cause for ending a tenancy. However, as noted above, the legislative history reveals a clearly expressed legislative intent that eviction is appropriate only if the tenant is personally at fault for a breach of the lease, i.e., if the tenant had knowledge of the criminal activities, or if the tenant had taken no reasonable steps under the circumstances to prevent the activity. This intent is controlling. *Avco Financial Services v. Isbell*, 67 N.C. App. 341, 312 S.E.2d 707 (1984). The legislative history makes clear that Congress did not intend the statute to impose a type of strict liability whereby the tenant is responsible for all criminal acts regardless of her knowledge or ability to control them. Accordingly, we hold that under 42 U.S.C. § 1437d(1)(5) good cause for eviction does not exist when a public housing tenant is not personally at fault for a breach of the criminal

activity termination provision of a public housing lease by a member of the tenant's household.

The decision of the North Carolina Supreme Court in *Maxton Housing Authority v. McLean*, 313 N.C. 277, 328 S.E.2d 290 (1985) supports our decision here. In *Maxton*, the Supreme Court held there was no "good cause" for terminating a public housing tenant's lease because the tenant was not personally at fault for the nonpayment of rent. The Court stated: "[t]here is no causal nexus between the eviction of [tenant] and her own conduct. . . . To eject [tenant] and her two children from their humble abode upon this evidence would indeed shock one's sense of fairness." *Id.* at 283, 328 S.E.2d at 294. Since the *Maxton* decision, the North Carolina Legislature has restricted the effect of *Maxton*, but not as it pertains to this case. The legislature limited the effect of *Maxton* only in cases of failure to make payments due under a rental agreement. Act of July 12, 1985, ch. 741, § 2, 1985 N.C. Sess. Laws 983, 984 (codified at N.C. Gen. Stat. § 157-29 (Supp. 1985)). Otherwise, the General Assembly affirmatively stated: "fault on the part of the tenant may be considered in determining whether good cause exists to terminate a rental agreement." *Id.*

The trial court found as fact that defendant had no knowledge of the shooting until after it occurred. The trial court further found that the gun used in the shooting was not kept in defendant's home, did not belong to anyone in her household, and that defendant had no reason to know that her son might commit such an act. In addition, the trial court found that CHA itself investigated Jonathan's suitability before consenting to add him back to defendant's lease. These findings are supported by the evidentiary record and are therefore conclusive. *Harrelson v. Insurance Co.*, 272 N.C. 603, 158 S.E.2d 812 (1968). Defendant was not personally at fault in the shooting; to evict her and her daughters with no evidence of fault on their part for the shooting would be inconsistent with the federal statute, with North Carolina Supreme Court precedent, and would indeed shock our sense of fairness. Accordingly, the decision of the trial court is affirmed.

Affirmed.

Chief Judge ARNOLD and Judge WYNN concur.