## Woodland Manor Apartments v. Flowers

C.P. of Lehigh County, no. 96-C-0201.

*Jordan D. Cunningham,* for plaintiff.
*Lori A. Molloy,* for defendant.

REIBMAN, *J.,* November 4, 1998—Before the court is plaintiff's action of ejectment and assumpsit. It pre-

sents the question of whether a tenant in federally assisted housing is strictly liable for the actions of members of her household or guests, *i.e.,* whether the tenant may be evicted from her apartment when not personally at fault for a breach of her lease or without prior knowledge of its breach.

Delphia Flowers, defendant, has resided in a residential apartment owned by Woodland Manor Apartments, plaintiff, at 441 Central Boulevard, Bethlehem, Lehigh County, Pennsylvania, since 1989. On July 13, 1995, law enforcement officers, acting on information that defendant's brother, Antrone Flowers, was en route to defendant's apartment from Oklahoma with a quantity of illegal drugs and a handgun in a vehicle registered in Oklahoma, and pursuant to a warrant, forced their entry in defendant's apartment within one hour after Antrone's arrival. A search of the premises found narcotics and narcotics paraphernalia in an upstairs bedroom used by another brother, Randy Flowers, and a handgun in the trunk of a vehicle registered in Oklahoma. Antrone and Randy were arrested and subsequently convicted of various drug offenses.

There is no basis to believe defendant knew of the presence of the drugs or the paraphernalia in her apartment, consented to it, or even foresaw that they would be there. She was not charged with any offense. An investigating police officer testified he had no reason to believe she was part of the illegal activity. Defendant denied any knowledge or suspicion of the drugs or the paraphernalia. In fact, she testified she had not been on the second floor of the apartment since becoming a quadriplegic as a result of an automobile accident in 1993, and stayed on the first floor with one of her two minor children who has cerebral palsy. Her other child occupied one, and Randy occupied the other, of

the upstairs bedrooms. Her caretakers, who were at the apartment daily, denied ever seeing or suspecting the presence of any drugs or paraphernalia at the apartment. Plaintiff's property manager, who thoroughly inspected the premises as recently as one month before the drugs were discovered, denied any knowledge or suspicion of drugs or paraphernalia.

Plaintiff's apartment complex is a section 8 "new construction" project. As such, it is subject to federal law and regulations promulgated thereunder. *Goodwin v. Rodriguez,* 520 Pa. 296, 304, 554 A.2d 6, 9 (1989). The United States Housing Act, 42 U.S.C. §1437 et seq., as amended, requires the lease agreement between the tenant and the owner of the apartment unit provide: "any drug-related criminal activity on or near such premises, engaged in by a tenant of any unit, any member of the tenant's household, or any guest or other person under the tenant's control, shall be cause for termination of tenancy." 42 U.S.C. §1437f(d)(1)(B)(iii).

The regulations which pertain to the "new construction" program, 24 C.F.R. §880 et seq., specify, inter alia, the only grounds upon which the owner may terminate the tenancy, viz:

"The owner may not terminate any tenancy except upon the following grounds:

"(i) Material noncompliance with the lease;

"(ii) Material failure to carry out obligations under any state landlord and tenant act;

"(iii) Any . . . drug-related criminal activity on or near such premises, engaged in by a resident, any member of the resident's household, or any guest or other person under the resident's control shall be grounds for termination of tenancy." 24 C.F.R. §880.607(b)(1).

The legislative history of the amendments to the Housing Act provides:

"Termination of tenancy—The bill includes language to permit evictions from section 8 existing housing for criminal activity, including drug-related criminal activity. It is based on a similar provision contained in the Anti-Drug Abuse Act of 1988 governing public housing leases . . . . The committee assumes that if the tenant had no knowledge of the criminal activity or took reasonable steps to prevent it, then good cause to evict the innocent family members would not exit [sic]." S. Rep. no. 316, 101st Cong., 2d Sess. 179 (1990). reprinted in 1990 U.S.C.C.A.N. 5763, 5889.

This history reveals an intent that eviction is appropriate only if the tenant is personally at fault for a breach of the lease, *i.e.,* if the tenant had knowledge of the criminal activities, or if the tenant had taken no reasonable steps under the circumstances to prevent the activity. See *Syracuse Housing Authority v. Boule,* 658 N.Y.S.2d 776 (City Ct. 1996); *Charlotte Housing Authority v. Patterson,* 464 S.E.2d 68 (N.C. App. 1995).[1]

---

1. This history is consistent with the legislature history for similar provisions of the Housing Act which affect other types of public housing tenants.

"The committee bill would amend a provision of the U.S. Housing Act that was added by the Anti-Drug Abuse Act of 1998. This provision makes criminal activity grounds for eviction of public housing tenants *if that action is appropriate in light of all the facts and circumstances.* This language was limited to criminal activity on or near the public housing premises.

"This section would make it clear that criminal activity, including drug-related criminal activity, can be cause for eviction only if it adversely affects the health, safety, and quiet enjoyment of the premises. The committee anticipates that each case will be judged on its individual merits and will require the wise exercise of humane

The lease agreement between the parties is, at best, ambiguous as to whether the tenant may be strictly liable for the actions of the members of her household or guest. In pertinent part, it provides: "[t]he landlord may terminate this agreement only for:

"(1) The tenant's material noncompliance with the terms of this agreement.

"(2) The tenant's material failure to carry out obligations under state Landlord and Tenant Act; or

"(3) Criminal activity that threatens the health, safety, or right to peaceful enjoyment of the premises by other tenants or any drug-related criminal activity on or near such premises, engaged in by a tenant, any member of the tenant's household, or any guest or other person under the tenant's control . . . ." Lease agreement, paragraph 23(b).

"Notwithstanding any other provision of this lease, the tenant, members of tenant's household, guests of tenant and other persons under tenant's control shall not engage in unlawful activity, including drug-related criminal activity, in the tenant's unit or on the project premises, and such unlawful activity shall be cause for termination of tenancy. 'Drug-related activity' means the illegal manufacture, sale, distribution, use, or possession of a controlled substance as defined in section 102 of the United States Controlled Substances Act, 21 U.S. Code §802. Criminal conviction under federal,

judgment by the PHA and the eviction court. *For example, eviction would not be the appropriate course if the tenant had no knowledge of the criminal activities of his/her guests or had taken reasonable steps under the circumstances to prevent the activity.*" S. Rep. no. 316, 101st Cong., 2d Sess. 179 (1990), reprinted in 1990 U.S.C.C.A.N. 5763, 5941. (emphasis added)

state or local law shall not be a precondition for termination of tenancy." Lease agreement, paragraph 13(c).

And finally:

"Illegal drugs and transactions involving illegal drugs are strictly prohibited.

"The head of household shall not do or permit any act which violates any law concerning illegal drugs.

"These acts include, without limitation, possession, use, distribution, transportation, sale, manufacture and storage of illegal drugs. Doing any of such acts or any other act involving illegal drugs is a violation of the lease and is grounds for *immediate eviction* from the property.

"The head of the household shall be responsible for his or her own acts, the *acts of members* of his or her household, and the *acts of guests* of the household and for any such acts involving illegal drugs done in the leased apartment or elsewhere on the landlord's property." Lease addendum. (emphasis in original)

Paragraphs 23(b)(1) and (2) of the lease require an affirmative act of noncompliance or a failure to act by the tenant. Paragraphs 23(b)(3) and 13(c) might arguably impose strict liability upon the tenant for the drug-related actions of the members of her household or guest. If that were the case, however, there would be no need for the lease addendum, which states "[t]he head of household shall not do or permit any act which violates any law concerning illegal drugs." To do or permit an act requires knowledge before there can be an act of commission or omission. In other words, for the tenant to be evicted, she had to know, or have reason to know, of the problem and either allow it

to persist or fail to take reasonable action to eliminate it. This interpretation is consistent, as it must be, with the legislative history of the statute.

Finally, the Pennsylvania Landlord and Tenant Act, 68 PS §250.101 et seq., provides:

"The following acts relating to illegal drugs shall be a breach of condition of the lease and shall be grounds for removal of the tenant . . .:

"(3) The seizure by law enforcement officials of any illegal drugs on the leased premises . . . ." 68 PS §250.505-A(a)(3).

If the legislature wished to make the tenant strictly liable, such language must plainly appear in the statute —no such language appears here. See *e.g., Denoncart v. Commonwealth State Ethics Commission,* 73 Pa. Commw. 59, 64, 457 A.2d 213, 216 (1983). (citations omitted) Moreover, the subsequently enacted Model Expedited Eviction of Drug Traffickers Act, 35 P.S. §780-151 et seq., provides an affirmative defense to an eviction of the tenant if the tenant did not know or have reason to know of the drug-related criminal activity or had done everything that could reasonably be expected in the circumstances to prevent the commission of the drug-related criminal activity. 35 P.S. §780-157(a). This provision is consistent with the legislative history of the Housing Act and clarifies the legislature's intent with respect to the effect of the Landlord and Tenant Act.

Accordingly, for the reasons set forth above, where, as here, a public housing tenant is not personally at fault—by commission or omission—for the drug-related activity of a member of her household or guest, no good cause exists for termination of the lease and eviction.

## ORDER

And now, November 4, 1998, upon consideration of plaintiff's action of ejectment and assumpsit, and after a non-jury trial thereon and for the reasons set forth in the accompanying opinion, it is ordered that judgment be entered in favor of defendant and against plaintiff in no amount.