723 A.2d 119 (1999)
318 N.J. Super. 191
HOUSING AUTHORITY OF the CITY OF JERSEY CITY, Plaintiff-Appellant,
v.
Betty THOMAS, Defendant-Respondent.
Superior Court of New Jersey, Appellate Division.
Submitted January 21, 1999.
Decided February 11, 1999.
Ignacio Perez, Jersey City, for plaintiff-appellant.
Hudson County Legal Services Corp., for defendant-respondent (John Ukegbu, Jersey City, of counsel and on the brief).
Before Judges BAIME and A.A. RODRIGUEZ.
The opinion of the court was delivered by BAIME, J.A.D.
The Housing Authority of the City of Jersey City (Authority) appeals from the Special Civil Part's denial of its demand for summary eviction. Although phrased in a variety of ways, the Authority contends (1) the trial court erred in its findings of fact, and (2) the doctrine of preemption compels application of federal law which makes a tenant strictly liable for the illegal activities of those present in the demised premises. We reject these arguments. The trial court's factual findings are amply supported by substantial evidence present in the record. We also hold that federal law does not require the eviction of an innocent tenant whose residence is invaded by a transgressor who surreptitiously conducts illegal drug activities on the premises.

I.
The Authority is a federally funded public housing agency. Defendant Betty Thomas is a fifty-eight year old diabetic who has resided *120 at the Booker T. Washington apartments since 1970. In her certificate of occupancy forms, defendant listed her adult son, Herbert Thomas, as a member of the household. On July 25, 1996, the police raided defendant's apartment and arrested Herbert Thomas after finding him in possession of 181 vials of cocaine. The Authority sought to evict defendant based on N.J.S.A. 2A:18-61.1(p). Under that section, a tenant may be evicted if the landlord establishes by a preponderance of the evidence that: (1) the tenant has committed a drug offense within the leased premises, or (2) the tenant permits "such a person" to occupy the premises "continuously or intermittently." Following an evidentiary hearing, Judge Velazquez found that defendant was not involved in any drug-related activities, that Herbert Thomas no longer resided in the apartment at the time of his arrest, and that defendant was unaware Herbert Thomas had surreptitiously entered the apartment at the time of the police raid.

II.
There is ample, credible evidence in the record supporting the Special Civil Part's findings. For instance, the police found Herbert Thomas in his brother's bedroom at 7:30 a.m. Defendant was asleep in her bedroom with the door closed. Both defendant and her daughter Telonda Thomas, a Jersey City public school teacher, testified that Herbert Thomas had abandoned his mother's apartment and had moved into his girlfriend's residence long before the date of the arrest. Telonda Thomas testified that she had apprised the Authority of this fact prior to Herbert Thomas's arrest. The Special Civil Part judge found both defendant and Telonda Thomas to be credible witnesses.
We are entirely satisfied that the findings made could reasonably have been reached on sufficient, credible evidence present in the record. State v. Johnson, 42 N.J. 146, 162, 199 A.2d 809 (1964). Judge Velazquez noted in his oral opinion that he initially viewed defendant's allegations with great skepticism, but, after seeing and hearing defendant and Telonda Thomas, he believed their testimony. We are obliged to give deference to the judge's findings as to the question of credibility, because he had the "feel" of the case and was able to determine questions of believability by observing the demeanor of the witnesses. Id. at 161, 199 A.2d 809. It cannot fairly be said that the judge's findings were clearly mistaken ones and were so plainly unwarranted that the interest of justice demands intervention. Id. at 162, 199 A.2d 809. Nor does the record suggest that the judge went wide of the mark in reaching his conclusions.

III.
In Housing Auth. of City of Hoboken v. Alicea, 297 N.J.Super. 310, 688 A.2d 108 (App.Div.1997), we held that "to justify the ultimate sanction of eviction under N.J.S.A. 2A:18-61.1(p), a tenant must not only `permit' a drug offender to occupy the leased premises, but must also tolerate the offender's occupancy of the premises knowing that such person has violated the [Comprehensive Drug Reform Act]." Id. at 313, 688 A.2d 108. The evidence presented below fully supports the Special Civil Part's conclusion that defendant was an "unknowing" and "innocent" tenant, and that it would be unfair to remove her from her residence based solely on the criminal act of another.
The Authority contends, however, that federal law makes a tenant strictly liable for the conduct of his or her guest, and that federal law preempts New Jersey's summary eviction statutes. We stress that the Authority's argument is not fully developed in its brief, and we have no occasion to determine generally whether, or to what extent, the doctrine of federal preemption applies in cases involving federally funded housing developments. See, e.g., Hill Manor Apts. v. Brome, 164 N.J.Super. 295, 395 A.2d 1307 (Cty.Dist.Ct.1978); see also Floral Park Tenants Ass'n v. Project Holding, Inc., 152 N.J.Super. 582, 378 A.2d 266 (Ch.Div.1977). We, of course, recognize that 42 U.S.C.A. § 1437d(l )(5) requires every public housing agency lease to include a provision stating that "any drug-related criminal activity on or near [public project developments] engaged in by a public housing tenant, any member of the tenant's household, or any guest or other person under the tenant's control shall be *121 cause for termination of [the] tenancy ...." Ibid. We also acknowledge existence of out-of-state authority supporting the proposition that the "standard for eviction in a public housing project which receives federal funding is a matter of federal, not state law." City of S. San Francisco Hous. Auth. v. Guillory, 49 Cal.Rptr.2d 367, 371 (Cal.Super.Ct.1995). The simple and overriding fact remains, however, that no possible source of federal preemption can be read to require the summary eviction of a tenant whose apartment is invaded by a transgressor against his or her will. The Special Civil Part judge found that this is what occurred in this case. To put the matter to rest, we conclude from our reading of the record that Herbert Thomas was not a "member of the tenant's household" (42 U.S.C.A. § 1437d(l )(5)) when he was arrested, and therefore, 42 U.S.C.A. § 1437d(l )(5) is not applicable. Cf. Charlotte Hous. Auth. v. Patterson, 120 N.C.App. 552, 464 S.E.2d 68, 71-72 (N.C.Ct.App.1995) (holding that tenant cannot be evicted because no good cause was shown where "member of the tenant's household" commits a criminal act but "tenant [was] not personally at fault for a breach of the criminal activity termination provision of a public housing lease"). Whatever the outer reach of the federal preemption doctrine, we do not perceive that federal law is implicated in this case and requires a result other than that reached by the Special Civil Part.
Affirmed.