743 A.2d 309 (1999)
327 N.J. Super. 246
HOUSING AUTHORITY AND URBAN REDEVELOPMENT AGENCY OF CITY OF ATLANTIC CITY, Plaintiff-Appellant,
v.
Joanne SPRATLEY, Margarite Burgess and Stacy Jackson, Defendants-Respondents.
Superior Court of New Jersey, Appellate Division.
Submitted December 1, 1999.
Decided December 30, 1999.
*310 Zeller & Bryant, Cherry Hill, for plaintiff-appellant (Natonya C. Phillips and Allen S. Zeller, on the brief).
Cape-Atlantic Legal Services, for defendants-respondents (Kenneth M. Goldman, on the brief).
Before Judges BAIME, BROCHIN and EICHEN.
The opinion of the court was delivered by
BAIME, P.J.A.D.
The Housing Authority of Atlantic City instituted summary dispossess actions against defendants based upon their refusal to accept an addendum to their leases. *311 The addendum permitted the Housing Authority to bring eviction proceedings for any drug-related criminal activity committed on or off the demised premises by the tenant, any member of the tenant's household, or any guest or other person under the tenant's control. This lease provision is mandated in all federally funded housing projects by federal statute and regulation and is part of the "one strike and you're out" policy promulgated by the Department of Housing and Urban Redevelopment (HUD). On motion of the defendants, the Special Civil Part dismissed the Housing Authority's complaints, finding that the addendum was unreasonable. The Housing Authority appeals. We reverse.

I.
The Housing Authority owns and operates the apartment complex in which defendants reside. The Authority receives federal funds. Defendants' rents are federally subsidized.
In 1990, Congress passed the Cranston-Gonzalez National Affordable Housing Act. 42 U.S.C. § 1437d(l)(5). The Act requires all public housing agencies to incorporate in their leases an "accountability" provision. Ibid. As amended in 1996, the mandated clause states in pertinent part:
Any criminal activity that threatens the health, safety or right to peaceful enjoyment of the premises by other tenants or any drug-related criminal activity on or off such premises, engaged in by a public housing tenant, any member of the tenant's household, or any guest or other person under the tenant's control, shall be cause for termination of [the] tenancy.

[42 U.S.C. § 1437d(l)(5).]
Implementing regulations provide that "any drug-related criminal activity ... [by a tenant, any member of the household, a guest, or another person under the tenant's control] shall be cause for termination of [the] tenancy, and for eviction from the unit." 24 C.F.R. § 966.4(f)(12)(1999).
In 1998, defendants were presented with new leases incorporating language that essentially tracks the statutory and regulatory provisions. The addendum states that the "authority shall terminate the tenancy of any resident family whose members ..., guest or other invitees engag[e] in drug-related criminal activity on or off the premises." The tenants refused to accept the proposed leases for fear they would be subject to eviction for the criminal acts of other parties. Specifically, they construed the addendum as making them "strictly liable" for drug-related activities committed by family members or guests regardless of their lack of knowledge or fault.
After serving defendants with appropriate notices, the Housing Authority filed separate summary dispossess complaints against each tenant. The Housing Authority relied upon N.J.S.A. 2A:18-61.1(i), which permits a summary eviction where the tenant refuses to accept "reasonable changes of substance in the terms and conditions of the lease." The actions were subsequently consolidated. On these meager facts, the Special Civil Part found that the federally mandated lease provision was "unreasonable" because it "subject[ed] tenants to eviction for the criminal acts of others over whom they ha[ve] no control" and about whose activities "they ha[ve] no knowledge." The court further concluded that HUD's "one strike and you're out" policy did not preempt New Jersey's Anti-Eviction Act (N.J.S.A. 2A:18-61.1) because regulations adopted by HUD conferred discretion on public housing agencies to craft eviction policies protecting tenants and allowing for individual circumstances. Although the court did not refer to any specific regulation, we assume that it was pointing to 24 C.F.R. § 966.4(l)(5)(i), which states that a public housing agency "shall have discretion to consider all of the circumstances of the case, including the seriousness of the offense, the extent of participation by family members, and the effects *312 that the eviction would have on family members not involved in the proscribed activity." The regulation permits a public housing agency to allow "continued occupancy by remaining family members." Ibid. It is against this factual backdrop that we address the arguments advanced.

II.
We begin with the question whether the federal statutes and regulations permit a public housing agency to evict a tenant who is not at fault because of the drug-related activities of a household member, guest or other person under the tenant's control. The parties have devoted much time and effort in addressing this point. The Housing Authority argues that the Cranston-Gonzalez Act and its implementing regulations authorize such a remedy. Defendants assert that this was not the legislative or regulatory intent. We briefly alluded to the problem in Housing Authority of the City of Jersey City v. Thomas, 318 N.J.Super. 191, 195-96, 723 A.2d 119 (App.Div.1999), but found it unnecessary to resolve the issue because the record was not fully developed. The issue has received uneven treatment in other jurisdictions. Compare City of South San Francisco Housing Auth. v. Guillory, 41 Cal.App. 4th Supp. 13, 19, 49 Cal.Rptr.2d 367, 371 (1995) (Congress provided "straightforward practical" method for eviction based on strict liability); Housing Authority of New Orleans v. Green, 657 So.2d 552, 554 (La.Ct.App.1995) (language does not imply that tenant must have knowledge about drug activity as precondition to eviction); Minneapolis Public Housing Auth. v. Lor, 591 N.W.2d 700, 703 (Minn.1999) (statute provides for strict liability, and discretion conferred on housing authority by the regulation does not "imbue" courts with power to review the manner in which discretion is exercised); Matter of Syracuse Housing Authority v. Boule, ___ A.D.2d ___, 701 N.Y.S.2d 541, ___(1999) (lease provides for strict liability although authority may exercise discretion and decide not to bring eviction proceedings) with Diversified Realty Group, Inc. v. Davis, 257 Ill.App.3d 417, 422, 195 Ill.Dec. 617, 628 N.E.2d 1081, 1085 (1993) (tenant must have "some minimum connection with the unlawful conduct" in order to be evicted); Charlotte Housing Authority v. Patterson, 120 N.C.App. 552, 557, 464 S.E.2d 68, 72 (1995) (good cause for eviction does not exist when tenant is not personally at fault).
We have no occasion to decide the question here. More specifically, we perceive no pressing need to decide the issue in the abstract. If, as defendants contend, the statute and regulations do not authorize a federally funded housing authority to evict a tenant without fault, the courts would be obliged to construe the lease provision accordingly if a summary dispossess action were brought against them for failure to abide by the lease provision. Therefore, defendants would not be placing themselves in jeopardy by signing the addendum which is essentially silent on the question of fault and strict liability.
We add that by signing the lease, defendants would not be waiving their right to challenge the Authority's construction of the accountability provision. The plain language of N.J.S.A. 2A:18-61.1(i) requires that to establish "good cause" for removal the landlord demonstrate merely, and without limitation in respect of time, that a tenant has refused to accept a reasonable term. Our Supreme Court has said, "[w]e therefore do not understand the statute to mean that a tenant must demonstrably refuse to accept a lease term, reasonable or otherwise, at the precise time the renewed tenancy begins." 447 Associates v. Miranda, 115 N.J. 522, 532, 559 A.2d 1362 (1989). Stated differently, "acceptance of a renewal lease should not bar tenants from later challenging the reasonableness of a term contained therein." Ibid. Thus, defendants did not face a choice between abandoning their leaseholds and accepting a lease they deemed repugnant to their rights. They could have signed the leases *313 without losing their opportunity to contest the accountability provision as unreasonable.
We are nevertheless not wholly unsympathetic to defendants' plights. By signing the new leases while reserving their right to challenge the accountability clause, the cloud of uncertainty regarding the tenants' rights would continue to linger. We emphasize, however, that the leases without the addendum which defendants previously signed required tenants to use their best efforts to prevent "member[s] of [their] households, guest[s] or other persons under [their] control" from engaging in "drug-related criminal activity." These leases already provided that a tenant's failure to comply with this obligation was "cause for termination of [the] tenancy." We acknowledge that the addendum perhaps expanded the exposure of a tenant respecting acts of third persons. The accountability clause did not, however, impose a duty upon the tenants that they did not already have. The addendum did not require defendants to do anything that they were not already obliged to do under the leases then in effect. Defendants would thus have lost nothing had they signed the leases under protest.
If, on the other hand, the statute and regulations impose strict liability on tenants for the drug-related criminal activities of members of families, guests or other persons under their control, this federal policy would be accorded paramountcy and our courts would be bound to enforce it. We agree that strict liability without fault may be considered a draconian remedy. We have thus construed N.J.S.A. 2A:18-61.1(p), which authorizes summary eviction for drug offenses committed on the leased property, as requiring that the tenant have "tolerate[d] the offender's occupancy of the premises knowing that such person has violated the [drug laws]." Housing Authority of the City of Hoboken v. Alicea, 297 N.J.Super. 310, 313, 688 A.2d 108 (App.Div.1997); see also Housing Authority of the City of Jersey City v. Thomas, 318 N.J.Super. at 195, 723 A.2d 119.
We nevertheless note that New Jersey's anti-eviction laws permit eviction of a public housing tenant who "has substantially violated or breached [a] covenant[ ] ... in [a] lease ... pertaining to illegal uses of controlled dangerous substances ... provided that such covenant ... conforms to federal guidelines." N.J.S.A. 2A:18-61.1(e)(2). This section requires our courts to enforce accountability provisions contained in public housing leases to the extent that they comport with federal requirements. In light of that mandate, we would be hard-pressed to suggest that our courts could nullify as "unreasonable" under N.J.S.A. 2A:18-61.1(i) lease provisions adopted to conform to such federal legislation or regulations.
Of course, we recognize that the "overall purpose" of our Anti-Eviction Act is to "protect[ ] blameless tenants from eviction." Chase Manhattan Bank v. Josephson, 135 N.J. 209, 226, 638 A.2d 1301 (1994). We also acknowledge that "[i]n establishing tenants' rights to continued occupancy of their rental dwellings the ... Act is remedial legislation deserving of liberal construction." 447 Associates v. Miranda, 115 N.J. at 529, 559 A.2d 1362. By enacting N.J.S.A. 2A:18-61.1(e)(2), however, our Legislature implicitly gave effect to federal primacy in defining the rights of tenants in federally funded housing projects. We are obliged to construe our statute accordingly. We thus conclude that the trial court erred by finding the federally-mandated accountability clause unreasonable under N.J.S.A. 2A:18-61.1(i).
We reach the same result under the federal preemption doctrine. Initially developed in Gibbons v. Ogden, 9 Wheat. 1, 22 U.S. 1, 6 L.Ed. 23 (1824), the rule is grounded in the Supremacy Clause and is designed to ensure its effective implementation. Turner v. First Union National Bank, 162 N.J. 75, 740 A.2d 1081 (1999). The essential question for a preemption *314 analysis is "whether Congress intended that the federal regulation supersede state law." Louisiana Pub. Serv. Comm'n v. Federal Communications Comm'n, 476 U.S. 355, 369, 106 S.Ct. 1890, 1899, 90 L.Ed.2d 369, 382 (1986). That inquiry is simple when Congress has expressly defined the extent to which the statute preempts state law. See, e.g., Schneidewind v. ANR Pipeline Co., 485 U.S. 293, 299, 108 S.Ct. 1145, 1150, 99 L.Ed.2d 316, 325 (1988). Alternatively, preemption may arise "by implication" when, for instance, "the scheme of federal regulation [is] so pervasive as to make reasonable the inference that Congress left no room for the State to supplement it," Rice v. Santa Fe Elevator Corp., 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447, 1459 (1947), or when the "object sought to be obtained by federal law and the character of the obligations imposed by it may reveal the same purpose." Ibid.; see Exxon Corp. v. Hunt, 97 N.J. 526, 532-33, 481 A.2d 271 (1984). Also, in the absence of express language or implied congressional intent to occupy the field, state law may be preempted "to the extent that it actually conflicts with federal law." Brown v. Hotel Employees Int'l Union, 468 U.S. 491, 510, 104 S.Ct. 3179, 3185, 82 L.Ed.2d 373, 383 (1984). Examples of "actual conflict" include instances in which "compliance with both state and federal regulations is a physical impossibility," Florida Lime & Avocado Growers v. Paul, 373 U.S. 132, 142-43, 83 S.Ct. 1210, 1217, 10 L.Ed.2d 248, 256-57 (1963), or in which state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." Hines v. Davidowitz, 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581, 587 (1941).
We recognize that "preemption is not to be lightly presumed." Franklin Tower One, L.L.C. v. N.M., 157 N.J. 602, 615, 725 A.2d 1104 (1999) (quoting California Fed. Sav. & Loan Ass'n v. Guerra, 479 U.S. 272, 281, 107 S.Ct. 683, 689, 93 L.Ed.2d 613, 623 (1987)). The historic police powers of the states are not to be superseded by federal law "unless that was the clear and manifest purpose of Congress." Wisconsin Pub. Intervenor v. Mortier, 501 U.S. 597, 605, 111 S.Ct. 2476, 2482, 115 L.Ed.2d 532, 543 (1991) (quoting Rice v. Santa Fe Elevator Corp., 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447, 1459 (1947)). This much conceded, state nullification of a federally-mandated lease provision based upon a finding of unreasonableness would tear at the very roots of our federal system. New Jersey is free to disagree with federal policy. It may not, however, create an insurmountable "obstacle to the accomplishment and execution of the full purposes and objectives of Congress." Michigan Canners & Freezers Ass'n, Inc. v. Agricultural Mktg. & Bargaining Bd., 467 U.S. 461, 469, 104 S.Ct. 2518, 2523, 81 L.Ed.2d 399, 406 (1984) (quoting Hines v. Davidowitz, 312 U.S. at 67, 61 S.Ct. at 404, 85 L.Ed. at 587).
Our federal system rests upon a proper and mutual respect between the federal and state governments. Interference by the state judiciary with respect to a responsibility conferred upon a federal agency with presumed expertise in its assigned field would be inherently abrasive. See Hill Manor Apartments v. Brome, 164 N.J.Super. 295, 308, 395 A.2d 1307 (Dist. Ct.1978). We thus conclude that the trial court committed error by refusing to enforce the federally-mandated accountability provision.

III.
Although raised below, the Special Civil Part did not address defendants' alternative argument that the Cranston-Gonzalez Act violates substantive due process. We do not reach this issue. We have no roving commission to consider and decide issues in the abstract. We will not address this question in advance of constitutional necessity.
We reverse the Special Civil Part's judgment and remand the matter to afford *315 defendants an opportunity to sign the new leases. We do not retain jurisdiction.