800 A.2d 265 (2002)
352 N.J. Super. 467
OAKWOOD PLAZA APARTMENTS, Plaintiff-Appellant,
v.
Andrea SMITH, Defendant, and
The Minor Children of Andrea Smith by Tamia Feaster, Defendants/Intervenors-Respondents.
Superior Court of New Jersey, Appellate Division.
Argued June 4, 2002.
Decided July 2, 2002.
*266 Jeffrey R. Kuschner, Montclair, argued the cause for appellant.
Janice Chapin, Elizabeth, argued the cause for intervenors-respondents (Union County Legal Services Corp., attorneys; Ms. Chapin, on the brief).
Before Judges WEFING, PARRILLO, and PAYNE.
The opinion of the court was delivered by PAYNE, J.S.C.(temporarily assigned).
In this appeal, we are again called upon to decide whether innocents may be evicted from their governmentally-subsidized apartment because of the drug-related activity of a family member.
This matter was commenced as an eviction action by a Section 8 landlord against its tenant, head-of-household Andrea Smith, who had been arrested for drug-related activity. By the time that suit was instituted, Smith had allegedly vacated the premises (she says, for good) and had been replaced there by Tamia Feaster, to whom legal custody of Smith's three minor children was transferred. Feaster intervened in the eviction action on the children's behalf arguing below that she and the children, as innocent tenants, could not be evicted under New Jersey law. The trial court agreed with Feaster's position and, after consideration of stipulated facts, dismissed the eviction action. This appeal by the landlord followed. For the reasons *267 stated below, we reverse and remand the case for further proceedings in accordance with our opinion.
We previously confronted issues relating to the eviction of innocent family members in two cases in which we were called upon to construe a provision of New Jersey's Anti-Eviction Act, N.J.S.A. 2A:18-61.1 to -61.12, that permits eviction of a tenant or lessee who "knowingly harbors or harbored [in the leased premises] a person who committed [a drug offense], or otherwise permits or permitted such a person to occupy those premises for residential purposes, whether continuously or intermittently." N.J.S.A. 2A:18-61.1(p). See Housing Authority v. Alicea, 297 N.J.Super. 310, 688 A.2d 108 (App.Div.1997) and Housing Authority v. Thomas, 318 N.J.Super. 191, 723 A.2d 119 (App.Div. 1999). In those cases, we determined that "to justify the ultimate sanction of eviction under N.J.S.A. 2A:18-61.1(p), a tenant must not only `permit' a drug offender to occupy the leased premises, but must also tolerate the offender's occupancy of the premises knowing that such person has violated the [Comprehensive Drug Reform Act]." Alicea, supra, 297 N.J.Super. at 313, 688 A.2d 108; Thomas, supra, 318 N.J.Super. at 195, 723 A.2d 119. We thereby recognized an innocent lessee exception to New Jersey's statutory cause for eviction.
Since our decisions in Alicea and Thomas, a similarly-motivated provision of the United States Housing Act of 1937, 42 U.S.C. §§ 1437 to 1437z, applicable to federally-subsidized, governmentally-owned and -operated public housing, has been construed by the United States Supreme Court to give public housing authorities the discretion to terminate the lease of a tenant when a member of the household or a guest has been found to have engaged in drug-related criminal activity on or near the leased premises, even if the tenant had no knowledge of the activity. See Department of Housing and Urban Development v. Rucker, ___ U.S. ___, 122 S.Ct. 1230, 152 L.Ed.2d 258 (2002), construing 42 U.S.C. 1437d(l)(6).[1] The Court held that
42 U.S.C. § 1437d(l)(6) unambiguously requires lease terms that vest local public housing authorities with the discretion to evict tenants for the drug-related activity of household members and guests whether or not the tenant knew, or should have known, about the activity.
[Id. ___ U.S. at ___, 122 S.Ct. at 1233, 152 L.Ed.2d at 265-66.][2]
The discretionary nature of the determination to evict was emphasized by the Rucker Court, which held:
The statute does not require the eviction of any tenant who violated the lease provision. Instead, it entrusts that decision to the local public housing authorities, who are in the best position to take account of, among other things, the degree to which the housing project suffers from "rampant drug-related or violent crime," 42 U.S.C. § 11901(2)(1994 ed. and Supp. V), "the seriousness of the offending action," 66 Fed.Reg., at 28803, and "the extent to which the leaseholder *268 has ... taken all reasonable steps to prevent or mitigate the offending action," ibid.

[Rucker, supra, ___ U.S. at ___, 122 S.Ct. at 1235, 152 L.Ed.2d at 268-69 (emphasis in original).]
Discretion has also been emphasized in federal regulations, which provide that in deciding to evict for criminal activity, the public housing authority "may consider all circumstances relevant to a particular case such as the seriousness of the offending action, the extent of participation by the leaseholder in the offending action, the effects that the eviction would have on family members not involved in the offending activity and the extent to which the leaseholder has shown personal responsibility and has taken all reasonable steps to prevent or mitigate the offending action." 24 C.F.R. § 966.4(l)(5)(vii)(B) (2002).
Factors relevant to the landlord's decision are also contained in non-binding interpretive materials generated by the Department of Housing and Urban Development (HUD) since Rucker was decided. In a letter dated June 6, 2002 from HUD Assistant Secretary Michael M. Liu to Public Housing Directors, Mr. Liu stated:
In Rucker, the Court unanimously affirmed the right of public housing authorities, under a statutorily-required lease clause, to evict entire public housing households whenever any member of the household, or any household guest, engages in drug-related or certain other criminal activity. The Rucker decision upholds HUD regulations that, since 1991, have made it clear both that the lease provision gives PHAs such authority and that PHAs are not required to evict an entire householdor, for that matter, anyoneevery time a violation of the lease clause occurs.
Therefore, after Rucker, PHAs remain free, as they deem appropriate, to consider a wide range of factors in deciding whether, and whom, to evict as a consequence of such a lease violation. Those factors include, among many other things, the seriousness of the violation, the effect that eviction of the entire household would have on household members not involved in the criminal activity, and the willingness of the head of household to remove the wrongdoing household member from the lease as a condition for continued occupancy. The Secretary and I urge you to consider such factors and to balance them against the competing policy interests that support the eviction of the entire household.
Like Congress and the Supreme Court, HUD recognizes that PHAs are in the best position to determine what lease enforcement policy will most appropriately serve the statutory interest of protecting the welfare of the entire tenant population. I know that you will continue to act in a manner that protects that general welfare, while giving considerationwhen you deem it appropriateto the interests of individuals who share a household with the wrongdoer, but were otherwise unconnected with the wrongdoing.
[Ibid.]
Oakwood Plaza Apartments, the plaintiff in the case now before us, is, as stated, a Section 8 privately-owned, rent-subsidized housing complex subject to 42 U.S.C. § 1437f and to federal regulations, the relevant provisions of which are codified at 24 C.F.R. § 982.310. It is not subject to 42 U.S.C. § 1437d, the provision construed in Rucker. The eviction in question, which arises out of the arrest of Smith for drug offenses that, if proven, would constitute first-degree crimes, is therefore not directly governed by Rucker.
*269 However, 42 U.S.C. § 1437f, like 42 U.S.C. § 1437d, requires that owners of housing units receiving assistance payments pursuant to Section 8 place in their leases the following provision:
... during the term of the lease, any... drug-related criminal activity on or near such premises, engaged in by a tenant of any unit, any member of the tenant's household, or any guest or other person under the tenant's control, shall be cause for termination of tenancy.
[42 U.S.C. § 1437f(d)(1)(B)(iii).] See also 24 C.F.R. § 982.310(c)(1).
When Smith rented her apartment, Oakwood Plaza's leases provided that "[t]enant actions which would endanger the health, safety or welfare of other tenants residing in the Development" constituted grounds for termination of the lease. Id. at ¶ 27B. In compliance with 42 U.S.C. § 1437f, Oakwood Plaza also promulgated a lease addendum, which states:

LEASE ADDENDUM ILLEGAL DRUGS
ILLEGAL DRUGS AND TRANSACTIONS INVOLVING ILLEGAL DRUGS ARE STRICTLY PROHIBITED.
THE HEAD OF HOUSEHOLD SHALL NOT DO OR PERMIT ANY ACT WHICH VIOLATES ANY LAW CONCERNING ILLEGAL DRUGS.
THESE ACTS INCLUDE, WITHOUT LIMITATION, POSSESSION, USE, DISTRIBUTION, TRANSPORTATION, SALE, MANUFACTURE AND STORAGE OF ILLEGAL DRUGS. DOING ANY OF SUCH ACTS OR ANY OTHER ACT INVOLVING ILLEGAL DRUGS IS A VIOLATION OF THE LEASE AND IS GROUNDS FOR IMMEDIATE EVICTION FROM THE PROPERTY.
THE HEAD OF HOUSEHOLD SHALL BE RESPONSIBLE FOR HIS OR HER OWN ACTS, THE ACTS OF MEMBERS OF HIS OR HER HOUSEHOLD, AND THE ACTS OF GUESTS OF THE HOUSEHOLD AND FOR ANY OF SUCH ACTS INVOLVING ILLEGAL DRUGS DONE IN THE LEASED APARTMENT OR ELSEWHERE ON THE LANDLORD'S PROPERTY.

* * *
[Ibid. (emphasis in original).]
Receipt and acceptance of the above addendum was acknowledged by Smith on June 10, 1991.
Because of the virtual identity of language in statutory provisions governing drug-related activity as a basis for eviction in public and Section 8 housing, there is no doubt that the reasoning of Rucker is applicable to this Section 8 case. Further, as we observed prior to Rucker when confronted with the issue of whether the refusal of public housing tenants to sign lease addenda conforming to 42 U.S.C. § 1437d(l)(5) constituted grounds for eviction:
If ... the [federal] statute and regulations impose strict liability on tenants for the drug-related criminal activities of members of families, guests or other persons under their control, this federal policy would be accorded paramountcy and our courts would be bound to enforce it.
[Housing Authority v. Spratley, 327 N.J.Super. 246, 253, 743 A.2d 309 (App. Div.1999).]
We reached the same conclusion on preemption grounds. Id. at 254-56, 743 A.2d 309. See also, Housing Authority Agency v. Taylor, 171 N.J. 580, 587-95, 796 A.2d 193 (2002).
*270 We distinguish Carteret Housing Auth. v. Gilbert, 301 N.J.Super. 109, 693 A.2d 955 (Law Div.1997), upon which the respondent-intervenors rely. In that case, the Law Division held that the minor daughter of a tenant in public housing who was declared emancipated and paid all back rent was entitled to remain in the housing after her mother's incarceration, because she was a "remaining member of a tenant family" under 42 U.S.C. § 1437a(b)(3)(A). The decision did not address the status of minor children whose eviction was sought because of a head of household's drug-related activities, but only the status of such a child whose eviction was sought because of nonpayment of rent. The policy base for the decision, as well as its statutory foundation, therefore differs.
The difficulties that we have in the case before us arise from the fact that it was decided by the court in the innocent family members' favor on the basis of state law before Rucker was decided and from the fact that it was determined on stipulated facts as a matter of law. As we have noted, Rucker does not mandate eviction; it permits it after suitable weighing of positive and negative factors such as those enumerated in federal regulations and HUD's June 6 letter. The same degree of discretion is involved in Section 8 evictions. See, e.g., 24 C.F.R. § 982.310(h). The federal statutory framework therefore does not permit a Section 8 landlord to act in an arbitrary or capricious fashion. Because no administrative procedure for eviction and challenges to eviction exists, the responsibility lies with the court in the first instance to determine whether a Section 8 landlord has exercised its discretion in a manner consistent with federal statute. The record below did not permit that determination to be made, since it did not reflect a weighing process over which the court could have asserted its power of review.[3]
A weighing of factors is particularly significant in this case because of its facts. As stated, the eviction action at issue was precipitated by the arrest of Smith, the head of household, for what appears to have been significant drug-related activity. We recognize that eviction in such circumstances may be justified not only as a means of deterrence but also by the need to prevent recurrence of criminal activity on the premises. However, we are unable to determine whether that justification exists in this case, and thus whether the landlord's discretion was properly utilized. For instance, the record suggests that Smith had removed herself from the premises prior to the initiation of the eviction action, and that she was about to undergo drug treatment. However, the record is silent as to whether removal was complete and final, whether drug treatment was in fact undertaken, and whether it was successfully completed. The record is also silent as to the final nature of charges against Smith and their ultimate resolution. Clearly, the length of incarceration, if any, is of relevance here since it provides an absolute period during which no return to the premises would be possible. This consideration is particularly significant in light of the fact that the oldest of the three children was fifteen when eviction proceedings were commenced, and therefore will reach his majority in the not-too-distant future. Further, the record does not indicate the conditions upon *271 which Smith would be permitted to visit her children in their apartment or to regain their custody, and it does not reflect the nature, extent or conditions of any supervision of the family by the Division of Youth and Family Services. As a final matter, the eligibility of Feaster for Section 8 housing is unclear.[4] Without doubt, Smith's present status and the likelihood of her informal return to the premises have a bearing on any determination regarding eviction, as does Feaster's status, evidence of the nature and extent of drug activity in the complex, and other factors previously outlined.
We therefore reverse the Law Division's order dismissing plaintiff's complaint for eviction and remand for further proceedings in accordance with this opinion.
NOTES
[1] That statutory provision requires that the public housing authority include as a term of its leases a provision that states in relevant part:

... any drug-related criminal activity on or off such premises, engaged in by a public housing tenant, any member of the tenant's household, or any guest or other person under the tenant's control, shall be cause for termination of tenancy.
[2] The Court also rejected due process challenges to its interpretation of the statute as permitting no-fault evictions. See Rucker, supra, ___ U.S. at ___, 122 S.Ct. at 1236, 152 L.Ed.2d at 269-70.
[3] Further, it reflects no input from any public housing agency that may have been charged with overseeing the Development and that may have independently adopted regulations implementing Rucker. See 42 U.S.C. 1437f(b)(1). Whether such oversight exists in this case is not clear.
[4] At oral argument, plaintiff expressly denied that the eviction was premised on the substitution of one head of household for another. Further, it appears unlikely that eviction on that ground alone would be sustainable in the present circumstances if Feaster was Section 8 eligible.