933 A.2d 607

LONG BRANCH HOUSING AUTHORITY, PLAINTIFF–
APPELLANT, v. TONI VILLANO, DEFENDANT–
RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued September 11, 2007—Decided October 10, 2007.

Before Judges SKILLMAN [1], YANNOTTI and LeWINN.

*Kevin E. Kennedy* argued the cause for appellant.

Toni Villano, respondent pro se, did not file a brief.

The opinion of the court was delivered by

## YANNOTTI, J.A.D.

The Long Branch Housing Authority (Authority) appeals from a judgment entered on June 1, 2006, which denied the Authority's application to evict defendant Toni Villano from one of its residential housing units and entered a judgment of no cause for action against the Authority. We reverse.

In or about July 2000, the Authority entered into an agreement with defendant for the lease of a residential unit in the Woodrow Wilson Homes in Long Branch. The lease provides in pertinent part that the tenant shall be obligated:

[t]o assure that Tenant, any member of the household, a guest, or other person under Tenant's control, shall not engage in:

(1) Any criminal activity that threatens the health, safety, or right to peaceful enjoyment of the Authority's public housing premises by other residents or employees of the Authority, or:

(2) Any drug-related criminal activity. Any criminal activity in violation of the preceding sentence shall cause termination of the tenancy, and eviction from the unit. (For the purposes of this lease, the term drug-related criminal activity means the illegal possession, manufacture, sale, distribution, use or possession with intent to manufacture, sell, distribute, or use, of a controlled substance as defined by Section 102 of the Controlled Substance Act.) . . .

(3) In conjunction with drug-related activity, the tenant shall comply with a "Zero Tolerance" policy on drug use. In accordance with New Jersey Law, a criminal conviction is not necessary to effectuate the eviction. Rather in the civil (eviction) the Complainant Housing Authority will need to satisfy a [lesser] standard of proof than would be required in a criminal case.

At or about the time she applied for the lease, defendant was provided with a copy of the Authority's "One Strike and You're

---

[1] Judge Skillman did not hear oral argument. However, with the consent of counsel for appellant, he has participated in the decision.

Out" policy. The policy indicates that the Authority would screen out and deny admission to applicants for various reasons, including a "recent history of criminal activity involving crimes to persons or property and/or criminal acts that affect the health, safety, or right to peaceful enjoyment of the premises by other residents." Admission would also be denied to a person who illegally uses a controlled dangerous substance (CDS). The policy states, however, that the Authority may grant admission if the applicant no longer uses a CDS provided the applicant presents proof of the successful completion of a treatment or rehabilitation program and has remained drug-free for at least one year after completing the program.

The policy further provides that the Authority will not tolerate any drug-related criminal activity on its property. The term "drug related criminal activity" is defined to mean "the illegal manufacture, sale, distribution, use, or possession with intent to manufacture, sell, distribute, or use a controlled substance." The policy additionally states that the Authority will terminate the lease of any resident if it determines that the tenant is "illegally using a controlled substance"; engages in drug-related criminal activity on or off the premises; or engages "in any activity that threatens the health, safety, or right to peaceful enjoyment of the premises by other residents."

On January 24, 2006, the Authority served upon defendant a notice to quit and a demand for possession of the leased premises. The notice stated that the lease was being terminated as of March 1, 2006. In the notice, the Authority alleged, among other things, that defendant, her co-tenants and guests had engaged in the illegal use/possession and/or distribution of a CDS. Defendant did not vacate the premises on March 1, 2006, and the Authority thereafter commenced an action in the Special Civil Part seeking a judgment of possession and defendant's removal from the premises.

At the trial, the Authority presented testimony from Lieutenant Lyndon B. Johnson (Johnson) of the Long Branch Police Depart-

ment (LBPD). Johnson testified that he has had training in narcotics and has participated in more than 500 drug-related arrests in Long Branch. Johnson asserted that in January 2006, the police received "extensive information" that "drug activity and narcotic dealings" were occurring in defendant's unit. The police had received numerous complaints that a person by the name of L.A. was dealing drugs directly out of the unit.

Johnson testified that the police initiated a plan to make undercover "controlled buys" of narcotics at defendant's apartment. Johnson explained that when such a "controlled buy" is made, an undercover informant is sent to the location. The police search the informant to confirm that he or she is not in possession of narcotics. The informant then proceeds to the location and purchases the narcotics. The police observe the transaction and, immediately thereafter, retrieve the contraband.

Johnson said that in January 2006, two "controlled buys" of drugs were made on separate dates out of defendant's apartment. On both occasions, narcotics were purchased from an individual we will refer to as L.A. As a result, the police applied to the Superior Court for the issuance of a warrant to search defendant's apartment. On January 20, 2006, the judge issued the warrant and authorized a "no-knock" entry into defendant's premises. Johnson explained that in these situations, before a search warrant is executed, the officers first make a "confidence buy" to ensure that the target is present and drugs are in the targeted unit.

Johnson testified that a "confidence buy" of crack cocaine was made out of defendant's unit on January 20, 2006. After the "buy," the officers "immediately hit the door" and entered the apartment. Defendant was in the apartment at the time, along with L.A., two adults and several juveniles. Johnson said that the officers found a clear plastic sandwich bag with eight smaller bags containing suspected crack cocaine on the couch in the living room.

Johnson stated that the officers made a complete search of the apartment. In one bedroom, the officers found numerous boxes of plastic sandwich bags, which Johnson said were an indication of

narcotics distribution. The officers found glass tubes, about six inches in length, that are used to smoke crack cocaine. The officers found a "cutting agent" that is used to dilute narcotics being sold. The police additionally found L.A.'s birth certificate and social security card, as well as certain "rules and regulations" of the "Bloods" street gang. Johnson said that L.A. was a "confirmed member" of the "Bloods." The police also found a police scanner, tuned to the LBPD's frequency.

Johnson testified that L.A. took possession of the drugs and admitted that the bedroom where the police found the packaging materials, scanner, and other materials was his room. Johnson asserted that he did not believe that L.A. was merely visiting defendant's unit on the day the search warrant was executed. Johnson stated that the police had received information on numerous occasions that L.A. was living in the unit.

L.A. was arrested for possession of a CDS, possession of a CDS with intent to distribute, possession of a CDS within 500 feet of public housing, and possession of narcotics paraphernalia. Defendant was not charged with any drug-related offense but she was arrested on an outstanding warrant. Johnson testified that the substances seized were positive for cocaine and weighed .53 grams.

Randy Phillips (Phillips), the Assistant Executive Director of the Authority, testified that in March 1997, the Authority had adopted its "One Strike and You're Out" policy. According to Phillips:

> [t]he one strike policy deals with several things. The main thing is that if a tenant is caught or anyone in the tenant's household or guest, ... is caught dealing or using drugs on Housing Authority property, then the tenant is evicted from public housing.

Phillips testified that defendant was given a copy of the policy when she applied to become a tenant. Defendant signed the document, which included the statement that she understood and agreed to abide by all of the conditions of her lease and that her lease was subject to termination if she violated any such condition.

Phillips asserted that the activities Lieutenant Johnson had described in his testimony were grounds for defendant's eviction under the lease. On cross-examination, Phillips conceded that defendant did not have a criminal record. He admitted that defendant has been a good tenant up until this incident. Phillips additionally conceded that defendant had not done anything "wrong" in the five years that she has been living in her unit.

Defendant also testified. She said that her daughter, who was then "twenty-something years old," brought L.A. to the apartment. Defendant said she had no knowledge that the drug activity was going on in her apartment. Defendant asserted that if she knew L.A. "even had anything in his pocket, he would have been out of my house and never [allowed] in my house ever again." Defendant stated that because of this incident, her daughter was no longer living "under [her] roof." Defendant added:

> I had no knowledge of this going on. I have two teenagers. I have kids in and out of my house. I can't control what anybody has in [his] pockets, Your Honor. Supposedly it was only $15 worth and [the police] didn't even want me. They wanted this guy. So I'm the one that's going down because they wanted this gentleman.

Defendant was asked whether she observed persons come to the apartment and engage in drug transactions. Defendant said that she had teenagers coming "in and out" of the apartment and she was "not even home half the time." Defendant noted that the drug paraphernalia was found in a bag that L.A. left in her daughter's room while his daughter was in the hospital having surgery.

The judge placed his decision on the record. The judge considered the Authority's complaint under *N.J.S.A.* 2A:18–61.1p, a provision of the Anti–Eviction Act that allows for the removal of a tenant who is found in a civil action to have committed an offense under the Comprehensive Drug Reform Act of 1987, *N.J.S.A.* 2C:35–1 to –28. The statute also allows eviction of a tenant who "knowingly harbors or harbored [in the leased premises] a person who committed such an offense, or otherwise permits or permitted

such person to occupy the premises, whether continuously or intermittently, ..." *N.J.S.A.* 2A:18–61.1p.

The Authority did not present any evidence that defendant committed a drug-related offense. Thus, the judge considered whether defendant "knowingly harbored" a person who committed a drug offense. The judge concluded that defendant had not "knowingly harbored" such a person. The judge made the following findings:

[T]he principal factor here is the time frame. Everyone seem[s] to agree [defendant] has lived [in the apartment] five years. This problem only developed around January and February [of 2006] as I gather. There were a total of three controlled buys, all of which, if I understand the testimony correctly, were in a day of each other. And her response to that is, yes, I have kids coming in and out of the house all the time. I have juveniles there.

I'm not convinced that there is proof by a preponderance of the evidence that [defendant] knew what this was. If this had been going on for a longer period of time or if this had happened at some earlier time in her five year tenancy there, I would think we would ... have established a preponderance of the evidence.

But where she has had a five year tenancy with no such activity, up until January and all the activity that was testified to was proven within a one or two day period of each other and all involved an individual who is not a family member, I don't think [it has] been established by a preponderance of the evidence at this point that [defendant] knowingly harbored someone to engage in drug activity.

The judge entered a judgment of no cause for action against the Authority. This appeal followed.

The Authority argues that the judge erred because the "prevailing law" allows a public housing authority to evict a tenant for drug-related criminal activity regardless of whether the tenant had actual knowledge of such activity. We agree.

Here, the judge found that the Authority did not establish grounds for defendant's eviction under *N.J.S.A.* 2A:18–61.1p because the Authority did not show by a preponderance of evidence that defendant had "knowingly harbored" a person who committed a drug-related offense. While there is support in the record for the judge's findings in this regard, we are convinced that the judge erred because he did not consider whether defendant's eviction was warranted under *N.J.S.A.* 2A:18–61.1e(2).

*N.J.S.A.* 2A:18–61.1e(2) states in pertinent part that a residential tenant in public housing under the control of a public housing agency may be removed from the leased premises if the tenant:

has substantially violated or breached any of the covenants or agreements contained in the lease for the premises pertaining to illegal uses of controlled dangerous substances, or other illegal activities, whether or not a right of reentry is reserved to the landlord in the lease for a violation of such covenant or agreement, provided that such covenant or agreement conforms to federal guidelines regarding such lease provisions and was contained in the lease at the beginning of the lease term.

Although *N.J.S.A.* 2A:18–61.1p applies to evictions for drug-related criminal activity in leaseholds covered by the statute, *N.J.S.A.* 2A:18–61.1e(2) more specifically applies to evictions of residential tenants in public housing whose lease terms are subject to federal guidelines and include provisions pertaining to illegal use of controlled dangerous substances, or other illegal activities. The Authority concedes that its leases must conform to applicable federal guidelines. Therefore, the Authority's complaint should have been considered under *N.J.S.A.* 2A:18–61.1e(2) rather than *N.J.S.A.* 2A:18–61.1p.

Our decision in *Housing Auth. v. Spratley*, 327 *N.J.Super.* 246, 743 *A.*2d 309 (App.Div.1999), supports our conclusion that *N.J.S.A.* 2A:18–61.1e2 applies to this dispute. In *Spratley*, the housing agency sought to evict tenants who had refused to execute new leases which included a federally-mandated lease term stating that drug-related criminal activity by a tenant, a member of the tenant's household, a guest, or another person under the tenant's control was ground for eviction. *Id.* at 249, 743 *A.*2d 309.

The housing agency argued that there was cause for eviction under *N.J.S.A.* 2A:18–61.1i, which states that a tenant may be evicted if the tenant does not agree to "reasonable changes of substance in the terms and conditions of the lease." *Ibid.* The trial judge held that the federally-mandated lease term was not reasonable because it subjected tenants to eviction on the basis of acts of persons the tenant does not control, or activities of which the tenant had no knowledge. *Ibid.*

We reversed the trial court's determination. We stated that our Legislature had enacted *N.J.S.A.* 2A:18–61.1e2 which expressly allows the eviction of residential tenants in public housing who violate lease terms pertaining to drug-related criminal activity, provided those terms conform to federal guidelines. *Id.* at 253, 743 *A.*2d 309. We held that *N.J.S.A.* 2A:18–61.1e(2)

> requires our courts to enforce accountability provisions contained in public housing leases to the extent they comport with federal requirements. In light of that mandate, we would be hard-pressed to suggest that our courts could nullify as "unreasonable" under *N.J.S.A.* 2A:18–61.1i lease provisions that conform to such federal legislation or regulations.
>
> [*Id.* at 253–54, 743 *A.*2d 309.]

We alternatively held that principles of federal preemption require enforcement of terms that meet federal requirements, noting that "state nullification of a federally-mandated lease provision based on a finding of unreasonableness would tear at the very roots of our federal system." *Id.* at 255, 743 *A.*2d 309.

In *Spratley,* we did not resolve the issue of whether federal law allows "a public housing agency to evict a tenant who is not at fault because of the drug-related activities of a household member, guest, or other person under the tenant's control." *Id.* at 251, 743 *A.*2d 309. However, that issue subsequently was resolved in *Dept. of Housing and Urban Dev. v. Rucker,* 535 *U.S.* 125, 122 *S.Ct.* 1230, 152 *L.Ed.*2d 258 (2002), where the Court held that 42 *U.S.C.A.* § 1437d($l$)(6) requires public housing agencies to utilize "lease terms that vest local public housing authorities with the discretion to evict tenants for the drug-related activity of household members and guests whether or not the tenant knew, or should have known, about the activity." *Id.* at 130, 122 *S.Ct.* at 1233, 152 *L.Ed.*2d at 266.

We therefore reverse the order dismissing the Authority's complaint and remand the matter to the trial court to determine whether the Authority established grounds for defendant's eviction under *N.J.S.A.* 2A:18–61.1e(2). The trial judge should determine whether: 1) defendant "substantially breached or violated" any covenant or agreement in the lease pertaining to the illegal

use of CDS in the Authority's premises; and 2) the relevant lease terms conform to applicable federal guidelines. Defendant should be permitted to be heard on any defense she may have to eviction under *N.J.S.A.* 2A:18–61.1e(2).

We note that the Supreme Court in *Rucker* made clear that that federally-mandated lease terms related to illegal activities in public housing do not *require* a tenant's eviction. Indeed, the regulations adopted by the federal Department of Housing and Urban Development provide that when a public housing agency determines whether to evict a tenant for criminal activity, the agency

> may consider all circumstances relevant to a particular case such as the seriousness of the offending action, the extent of participation by the leaseholder in the offending action, the effects that the eviction would have on family members not involved in the offending activity and the extent to which the leaseholder has shown personal responsibility and has taken all reasonable steps to prevent or mitigate the offending action.
>
> [24 *C.F.R.* § 966.4(*l*)(5)(vii)(B) (2007).]

Consideration of these circumstances must be undertaken "in a manner consistent with" certain "policies, procedures and practices." *Ibid.* Those "policies, procedures and practices" reflect the importance of evicting persons who engage in activity detrimental to the public housing community, and "the demand for assisted housing by families who will adhere to lease responsibilities." 24 *C.F.R.* § 966.4 (*l*)(5)(vii)(A) (2007).

Here, the Authority exercised its discretion and elected to seek defendant's eviction because of the drug-related criminal activities that occurred in defendant's unit. The Authority may wish to reconsider its determination in light of the evidence presented at the trial of this matter. As we pointed out previously, defendant insisted that she did not know that L.A. was selling narcotics from her apartment, and was not aware that he had drug paraphernalia in his room. The judge found defendant's testimony to be credible.

Furthermore, the notice to quit issued in this matter states that defendant was arrested on January 24, 2006 on various drug-related charges. Lieutenant Johnson made clear that defendant was arrested on an outstanding warrant, not for any drug-related criminal offense. In his testimony, Phillips conceded that defendant did not have a criminal record. Defendant also said that her

daughter brought L.A. to stay in the apartment but, after L.A.'s arrest, both of these individuals were no longer living in the unit.

Moreover, although the Authority relied upon its "One Strike and You're Out" policy when seeking defendant's eviction, the policy does not appear to mandate eviction in the circumstances presented in this case. The policy allows a tenancy to be terminated when a tenant engages in the use of a controlled substance, or other drug-related criminal activities. The policy does not expressly provide for termination of the tenancy based on drug-related criminal activities of other members of the tenant's household, or guests.

We recognize that the federally mandated terms of defendant's lease may very well warrant her eviction from the premises based on the evidence that L.A. engaged in drug-related criminal activities in the leased premises. Nevertheless, under 24 *C.F.R.* § 966.4(*l*)(5)(vii)(B)(2007), the Authority retains the discretion to consider "all circumstances relevant to a particular case" before invoking its rights under the lease.

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.