34 A.3d 1271

NEWARK HOUSING AUTHORITY, PLAINTIFF, v. VIRGINIA
MARTINEZ–VEGA, LUIS VEGA, AND GEORGE
BORGES, DEFENDANTS.

Superior Court of New Jersey
Law Division Special Civil Part
Essex County

Decided October 6, 2011—January 26, 2012.

*Sarah E. Jones* for plaintiff (*Ellen M. Harris*, Senior Counsel, *Department of Community Affairs, Newark Housing Authority*, attorney).

*Karen Thurston* for defendants (*Essex Newark Legal Services*, attorneys).

FAST, J.S.C. (retired and temporarily assigned on recall).

This is an opinion of first impression, relating to the factors that must be considered before a summary action for possession is commenced when a tenant resides in a federally subsidized public-

ly owned apartment, as these defendants do. This opinion discusses those factors and their relevance to the decision by plaintiff to proceed with the eviction of a family group.

## PROCEDURAL CONSIDERATIONS

This complaint, seeking the eviction of defendants, was based on the statutory grounds for eviction found at *N.J.S.A.* 2A:18–61.1(e)(2) and (p),[1] which provide that:

In public housing under the control of a public housing authority or redevelopment agency, the person has substantially violated or breached any of the covenants or agreements contained in the lease for the premises pertaining to illegal uses of controlled dangerous substances, or other illegal activities, whether or not a right of reentry is reserved to the landlord in the lease for a violation of such covenant or agreement, provided that such covenant or agreement conforms to federal guidelines regarding such lease provisions and was contained in the lease at the beginning of the lease term.

. . . .

The person has been found, by a preponderance of the evidence, liable in a civil action for removal commenced under this act for an offense under ... the *"Comprehensive Drug Reform Act of 1987," N.J.S.* 2C:35–1 et al., [sic] involving the use, possession, manufacture, dispensing or distribution of a controlled dangerous substance, controlled dangerous substance analog or drug paraphernalia within the meaning of that act within or upon the leased premises or the building or complex of buildings and land appurtenant thereto, or the mobile home park, in which those premises are located, and has not in connection with his sentence for that offense either (1) successfully completed or (2) been admitted to and continued upon probation while completing a drug rehabilitation program pursuant to *N.J.S.* 2C:35–14; or, being the tenant or lessee of such leased premises, knowingly harbors or harbored therein a person who committed such an offense, or otherwise permits or permitted such a person to occupy those premises for residential purposes, whether continuously or intermittently, except that this subsection shall not apply to a person who harbors or permits a juvenile to occupy the premises if the juvenile has been adjudicated delinquent upon the basis of an act which if committed by an adult would constitute the offense of use or possession under the said *"Comprehensive Drug Reform Act of 1987."*

There are no procedural issues that have been raised in this case.

---

[1] The Newark Housing Authority (NHA) filed this complaint seeking to evict defendant-tenant Virginia Vega (Virginia) and her son, Luis Vega (Luis), and her nephew, George Borges, both of whom have resided with Virginia at the apartment for over thirteen years.

## FACTS

I find that the facts are not in dispute: On August 19, 2010, Newark police officers executed a search warrant at the subject apartment and arrested Julian Wells, Virginia's older son, then twenty-seven, Duane Danby, and Luis, after having found marijuana, heroin and a gun in a book bag in the apartment. Wells did not live with Virginia at the time of the incident: Virginia testified that she had "put him out of her apartment" approximately four years earlier and that he did not have a key to the apartment because she did not approve of his activities. Wells, who is paralyzed and confined to a wheelchair, had his medical supplies delivered to Virginia's apartment. The medical supplies included diapers, catheters and other items necessary for his condition, and he would come to the apartment periodically to pick up those supplies. (On this day, he was accompanied by Danby, otherwise unrelated to this case.) Wells would call Virginia first to let her know that he was coming and he would only stay for a short time. According to the testimony, neither Virginia nor Borges was home at the time of the arrest.[2] Wells is now incarcerated.

Defendants, remaining family members, have defended this action based on their claim of non-involvement in the cause of the arrest, and the impropriety of proceeding against them, as a matter of discretion by the NHA.

As is frequently the situation in this type of case (i.e., proceeding to evict persons who have not been shown to have participated in the offense or been actually knowledgeable about the underlying facts justifying eviction), the evidence of their knowledge is not direct, but must be determined from circumstantial evidence. The evidence presented in this case leads me to the conclusion that defendants did not participate in the offense and had no knowledge of it.

---

[2] The Essex County Prosecutor's Office has since dismissed all charges against Luis.

## CONSIDERATION OF LEGAL ISSUES

24 *C.F.R.* § 966.4(*l* )(5)(vii) provides that:

(vii) PHA action, generally.

(A) Assessment under PHAS. Under the Public Housing Assessment System (PHAS), PHAs that have adopted policies, implemented procedures and can document that they appropriately evict any public housing residents who engage in certain activity detrimental to the public housing community receive points. (See 24 *CFR* 902.43(a)(5).) This policy takes into account the importance of eviction of such residents to public housing communities and program integrity, and the demand for assisted housing by families who will adhere to lease responsibilities.

(B) Consideration of circumstances. In a manner consistent with such policies, procedures and practices, the PHA may consider all circumstances relevant to a particular case such as the seriousness of the offending action, the extent of participation by the leaseholder in the offending action, the effects that the eviction would have on family members not involved in the offending activity and the extent to which the leaseholder has shown personal responsibility and has taken all reasonable steps to prevent or mitigate the offending action.

(C) Exclusion of culpable household member. The PHA may require a tenant to exclude a household member in order to continue to reside in the assisted unit, where that household member has participated in or been culpable for action or failure to act that warrants termination.

*Oakwood Plaza Apartments v. Smith,* 352 *N.J.Super.* 467, 474 [800 *A.*2d 265] (App.Div.2002) (footnote omitted) stated that:

The federal statutory framework therefore does not permit a Section 8 landlord to act in an arbitrary or capricious fashion. Because no administrative procedure for eviction and challenges to eviction exists, the responsibility lies with the court in the first instance to determine whether a Section 8 landlord has exercised its discretion in a manner consistent with federal statute. The record below did not permit that determination to be made, since it did not reflect a weighing process over which the court could have asserted its power of review.

*Long Branch Housing Authority v. Villano,* 396 *N.J.Super.* 185, 195 [933 *A.*2d 607] (App.Div.2007) stated:

We recognize that the federally mandated terms of defendant's lease may very well warrant her eviction from the premises based on the evidence that L.A. engaged in drug-related criminal activities in the leased premises. Nevertheless, under 24 *CFR* § 966.4(*l* )(5)(vii)(B) (2007), the Authority retains the discretion to consider "all circumstances relevant to a particular case" before invoking its rights under the lease.

I must therefore engage in the "weighing process" required by federal and state legislation and case law.[3] Indeed,

---

[3] The case law includes, of course, the case commonly cited as *Oakland Housing Authority v. Rucker,* 535 *U.S.* 125, 122 *S.Ct.* 1230, 152 *L.Ed.*2d 258

plaintiff has formalized the factors to be considered before commencing an eviction action against, arguably, non-culpable tenants[4] and occupants.[5] Those factors are included in plaintiff's "Admissions and Continued Occupancy Policies" (commonly referred to as the "ACOP" factors) and are found on page 124 of plaintiff's current ACOP.

Plaintiff did present testimony relating to the consideration of the ACOP factors.[6]

The factors listed in plaintiff's ACOP are:

a. The seriousness of the offending action, especially with respect to how it would affect other residents;

b. The extent of participation or culpability of the leaseholder, or other household members, in the offending action, including whether the culpable member is a minor;

c. The effects that the eviction will have on other family members who were not involved in the action or failure to act;

d. The effect on the community of the termination, or of NHA's failure to terminate the tenancy;

e. The effect of the NHA's decision on the integrity of the Public Housing program;

---

(2002), which stated that "Thus, the plain language of [42 *U.S.C.A.* § 1437d(*l*)(6)] requires leases that grant public housing authorities the *discretion* to terminate tenancy without regard to the tenant's knowledge of the drug-related criminal activity." (Emphasis added.)

[4] Of course, if the person to be evicted is a culpable person, the factors militating against proceeding with the eviction become less stringent.

[5] Mel Martínez, former Secretary of Housing and Urban Development, issued a memorandum addressed to "Dear Public Housing Directors", dated April 16, 2002, reinforcing the principle of discretion in enforcing the "household responsibility clause" as contained in the instant lease. The memorandum stated, *inter alia,* that "the household responsibility clause provides public housing authorities a strong tool to use in dealing with the problem of illegal drugs. But, as a tool, it should be applied responsibly. Applying it rigidly could generate more harm than good."

[6] Because I was not aware of any case relating to the relative weight of the various ACOP factors, I requested briefs from both counsel on that issue.

f. The demand for housing by eligible families who will adhere to lease responsibilities;

g. The extent to which the leaseholder has shown personal responsibility and whether they have taken all reasonable steps to prevent or mitigate the offending action;

h. The length of time since the violation occurred, the family's recent history, and the likelihood of favorable conduct in the future; and

i. In the case of program abuse, the dollar amount of the underpaid rent and whether or not a false certification was signed by the family.

█ The property manager, Robert Griffin, testified about his consideration of the ACOP factors, on behalf of the NHA. When questioned by plaintiff's attorney about which factors he considered, Griffin read each factor word for word. I find that his consideration was not a genuine consideration of the factors, but rather that it was a rote statement of the factors. I therefore conclude that NHA did not truly consider its own formulation of the ACOP factors.

Furthermore, after reading the first factor, plaintiff's attorney asked whether Griffin weighed it heavily. He said "yes" and was then asked "why?" He paused and then said, "Well first I need to say something. It's the NHA's policy that a one-strike case be moved forward." Plaintiff's attorney then asked, "But you can make the determination and did you make the determination to decide to terminate the tenancy?" The manager replied, "Yes, at first, yes." Plaintiff's attorney then said, "OK, you can go through the other factors you considered." The manager then recited word for word factors (b) through (i) with no analysis of whether he considered each factor and how much weight he gave to each factor.

When Griffin was cross-examined regarding the circumstances, he testified that defendants Luis and Borges are good young men who are trying to do the right thing.[7]

Q: How long have you been the manager at this complex?

---

[7] The quoted testimony in this opinion was provided by defense counsel. I do not have a copy of the transcript.

A: Approximately 4–5 years.

Q: And how long have you known the Vega family?

A: I've known them for longer.

Q: So you knew the Vega family before you became the manager at their site?

A: Yes.

Q: In what capacity have you known the family?

A: I work with children and I work with their son, George Borges.

Q: What did you work with him doing?

A: At first it was through a Big Brother Program and then through a sports program.

Q: Do you coach him in boxing?

A: Yes.

Q: How would you describe George?

A: George, he's a good young man, I mean he's trying to do the right thing.

Q: How well do you know Luis?

A: I know Luis also.

Q: And how would you describe Luis?

A: As far as I know, Luis is the same, a good young man. Other than this incident, I never knew him to have any problems.

Q: Do you know Ms. Vega well also?

A: Yes.

Griffin then testified that there were no problems with the Vega family before the incident, nor have there been any problems in the more than one year since the incident. He testified that he does not believe the remaining household members pose a threat to the health, safety and well-being of the neighborhood and community.

He also testified that he does not anticipate any problems from them in the future.

Q: Did the NHA have any problems with Ms. Vega's household before this incident?

A: No.

Q: Was she ever brought to court for anything?

A: No.

Q: And has the NHA had any problems with Ms. Vega's household since the incident, since Julian has been incarcerated?

A: No, no.

Q: And that's been over a year, right?

A: Yes.

Q: Did the NHA consider the extent of participation or culpability of the leaseholder or other household members?

A: Yes.

Q: Was Ms. Vega involved?

A: No.

Q: Was George involved?

A: No.

Q: Do you think that the remaining household members are a threat to the health, safety and well-being of the neighborhood and community?

A: No.

Q: Do you feel that Ms. Vega, as the head of household, has taken all responsibility and done the best that she can with this situation?

A: Yes.

Q: Did the NHA consider the length of time since the violation occurred?

A: Yes.

Q: And how long has it been?

A: Approximately a year, a little more.

Q: Did the NHA consider the family's recent history?

A: Yes.

Q: And have there been any problems?

A: No.

Q: And did the NHA consider the likelihood of favorable conduct in the future, meaning does the NHA anticipate having problems from the remaining household members?

A: No, I don't anticipate any problems.

Although plaintiff's laudable approach is to maintain a healthy and safe environment for its tenants, or to provide housing for eligible families who will adhere to lease responsibilities, I find that plaintiff may not disregard the law as included in its own stated policies, to the detriment of those who conform to those policies—the remaining non-culpable family members. If the arrest of one family member is *per se* sufficient for the eviction of other non-culpable family members, there would have been no justification for the statement of policies, contrary to the dictates of *Oakland Housing Authority v. Rucker, supra,* 535 *U.S.* 125 n. 4, 122 *S.Ct.* 1230 n. 4, 152 *L.Ed.*2d 258 n. 4.

My analysis of the factors [8] suggests that some are essentially statements of policy, including the perception by others of the administration of the program. Those factors are:

a. The seriousness of the offending action, especially with respect to how it would affect other residents; ...

d. The effect on the community of the termination, or of NHA's failure to terminate the tenancy);

e. The effect of NHA's decision on the integrity of the Public Housing program; and

f. The demand for housing by eligible families who will adhere to lease responsibilities.

The remaining factors:

b. The extent of participation or culpability of the leaseholder, or other household members, in the offending action, including whether the culpable member is a minor;

c. The effects that the eviction will have on other family members who were not involved in the action or failure to act; ...

g. The extent to which the leaseholder has shown personal responsibility and whether they have taken all reasonable steps to prevent or mitigate the offending action; and

h. The length of time since the violation occurred, the family's recent history, and the likelihood of favorable conduct in the future,

are all related to NHA's management's subjective perception of the conduct of, and affect on, the tenant-family.

■ What I have called "policy factors" are, I find, not susceptible to debate, and are virtually not able to be weighed. However, the remaining factors are required to be given genuine consideration, rather than a rote statement or cursory evaluation. In this case, I find the following factors weigh heavily in favor of defendants, and therefore that the decision to proceed with this case was an abuse of discretion on the part of plaintiff. Specifically, I have found that:

---

[8] Except for factor I (In the case of program abuse, the dollar amount of the underpaid rent and whether or not a false certification was signed by the family), which is not applicable to "one strike" cases, all other factors do relate, to one degree or another, to "one strike" cases.

1. defendants did not participate in the offending action (factor b);

2. the effect that eviction from this "housing of last resort" would have on these defendants would be critical to them (factor c);

3. the leaseholder, Virginia, has shown personal responsibility because she had "put him [Wells] out of her apartment" approximately four years earlier and he did not have a key to the apartment because she did not approve of his activities and therefore has taken all reasonable steps to prevent the offending action (factor g); and

4. according to the testimony of plaintiff's own witness, the family's recent history and the likelihood of favorable conduct in the future are in favor of defendants (factor h).

The ACOP also includes the following:

### Alternative to Termination of Tenancy

1. **Exclusion of Culpable Household Member**—As an alternative to termination of the lease for criminal activity or alcohol abuse HUD provides that NHA may consider exclusion of the culpable household member. Such an alternative may be used, by NHA policy, for any reason where such a solution appears viable. [24 *C.F.R.* § 966.4($l$)(5)(vii)(C) ].

NHA will consider requiring the resident to exclude a household member in order to continue to reside in the assisted apartment, where that household member has participated in or been culpable for action or failure to act that warrants termination.

As a condition of the family's continued occupancy, the head of household must certify that the culpable household member has vacated the apartment and will not be permitted to visit or to stay as a guest in the assisted apartment.[9] The family must present evidence of the former member's current address upon NHA request.

2. **Repayment of Family Debts**—If a family owes amounts to NHA, as a condition of continued occupancy, NHA will require the family to repay the full

---

9 Of course, since the culpable family member is incarcerated, the head of household will have no problem in complying with his current absence from the apartment. However, the head of household will also be responsible to assure that he does not "visit or stay as a guest" after he has been released from incarceration. In this case, because of Wells' medical problem, he will have to arrange to get his medical supplies from another location.

amount or to enter into a repayment agreement, within 30 days of receiving notice from NHA of the amount owed.

## CONCLUSION

The conclusion of the above is that these defendants, non-culpable family members, should not be evicted and the complaint is therefore dismissed.