IN THE SUPREME COURT OF NORTH CAROLINA

No. 32PA15

Filed 19 August 2016

EASTERN CAROLINA REGIONAL HOUSING AUTHORITY

v.

SHERBREDA LOFTON


On discretionary review pursuant to N.C.G.S. § 7A-31 of a unanimous decision of the Court of Appeals, ___ N.C. App. ___, 767 S.E.2d 63 (2014), affirming an order and judgment entered on 29 August 2013 by Judge David B. Brantley in District Court, Wayne County. Heard in the Supreme Court on 16 November 2015.

Ward and Smith, P.A., by Michael J. Parrish and E. Bradley Evans, for plaintiff-appellant.

Robinson, Bradshaw & Hinson, P.A., by John R. Wester, Thomas Holderness, and Erik Randall Zimmerman, pro hac vice; and Legal Aid of North Carolina, Inc., by John Keller, Theodore O. Fillette, III, Peter Gilbert, and Andrew Cogdell, for defendant-appellee.

Brownlee Law Firm, PLLC, by William K. Brownlee, for Apartment Association of North Carolina, amicus curiae.

John R. Rittelmeyer and Yasmin Farahi for Disability Rights North Carolina, amicus curiae.

Francis Law Firm, PLLC, by Charles T. Francis and Ruth Sheehan, for Housing Authority of the City of Raleigh, amicus curiae.

NEWBY, Justice.

E. Carolina Reg'l Hous. Auth. v. Lofton

*Opinion of the Court*

In this case we consider whether public housing authorities must exercise discretion when pursuing evictions that are not otherwise mandated by federal law. Recognizing that public housing is the housing of last resort, Congress intended public housing authorities to exercise discretion in certain eviction proceedings, such as the lease violation at issue here arising from the actions of a third party. The trial court's findings establish that plaintiff failed to exercise its discretion before pursuing defendant's eviction. Accordingly, plaintiff has not established its right to summary ejectment. Nonetheless, because the Court of Appeals erred by imposing an unconscionability analysis, we modify and affirm the decision of that court.

Defendant is a tenant in Brookside Manor, which is owned and operated by plaintiff, a federally subsidized housing authority. The tenancy is governed by a signed lease that contains various provisions required by federal law.[1] Relevant here, the lease prohibits "[a]ny drug-related criminal activity on or off the premises" and provides that plaintiff "may terminate . . . the Lease and the tenancy" for any such activity "by Tenant, any of Tenant's household members, any guest of Tenant, or another person under Tenant's control."[2] Plaintiff's "Resident Handbook" and

---

[1] The operation and management of public housing authorities, including lease terms and procedures, are governed by the United States Housing Act of 1937, Pub. L. No. 75-412, 50 Stat. 888 (codified as amended in scattered sections of 42 U.S.C.), and its regulations, *see* 24 C.F.R. §§ 966.1 to 966.57 (2016).

[2] The lease defines a "guest" as "a person temporarily staying in the unit with the consent of Tenant or other member of the household with authority to consent on behalf of Tenant." The lease defines a "person under Tenant's control" as "a person not staying as a guest in the dwelling unit, but [one who] is or was present on the premises at the time of the activity in question because of an invitation from Tenant."

"Admission and Continued Occupancy Policy," both incorporated into the lease, restate the same, characterizing "[d]rug-related criminal activity engaged in on or off the premises by a tenant, member of the tenant's household or guest, and any such activity engaged in on the premises by any other person under the tenant's control, [a]s grounds to terminate tenancy."

Defendant often asked Cory Smith to baby-sit her children while she worked at night. On 26 April 2013, Smith arrived at defendant's apartment to watch the children while defendant slept before work and later while she worked. While defendant slept, law enforcement entered the apartment and arrested Smith for outstanding child support warrants. Officers searched Smith incident to his arrest and found four small bags of marijuana in his pocket.

Defendant consented to a search of her apartment, during which officers discovered a partially prepared "marijuana blunt" in plain sight, marijuana in plain sight on the kitchen counter, plastic bags for packaging marijuana for sale, and fourteen more bags of marijuana behind a pan on the kitchen counter. Smith admitted that the marijuana belonged to him, and he was charged with felony possession with intent to sell and deliver a controlled substance. Defendant was not charged.

On 22 May 2013, plaintiff notified defendant in writing that she had breached the lease because of the drug-related activity that had occurred in her apartment by Smith, a person under her control. Plaintiff stated it had terminated defendant's

E. Carolina Reg'l Hous. Auth. v. Lofton

*Opinion of the Court*

lease and ordered her to vacate her apartment. When defendant failed to comply, plaintiff sought summary ejectment. Following a hearing, the magistrate entered judgment for plaintiff, entitling plaintiff to take possession.[3]

Upon appeal to the District Court, Wayne County, for a trial de novo, defendant admitted that Smith placed marijuana in various places in the apartment, that Smith was under her control, and that her lease made her "responsible for the conduct of her guests or persons under her control." Plaintiff's manager testified that she believed any drug-related criminal activity required eviction. In its order the trial court noted defendant's acknowledgement that "drug-related criminal activity" occurred in her apartment and that such activity would "authorize Plaintiff to evict her from her apartment" despite "her lack of knowledge of" the criminal activity. Nonetheless, the trial court found in part:

> 8. Plaintiff did not produce evidence that it considered any mitigating factors or used any discretion in making its decision to terminate Defendant's lease. The only decision Plaintiff considered was whether Defendant met the criteria for having a person under her control who engaged in drug-related criminal activity.
>
> 9. It did not appear that Plaintiff, through its two witnesses, understood that it even had the authority or

---

[3] In the initial complaint, plaintiff appears to have elected to pursue defendant's eviction under N.C.G.S. § 42-63 (2015), which allows for eviction as a result of certain criminal activity. Nonetheless, the complaint also described the specific lease terms violated by defendant. On 8 July 2013, the parties stipulated to amend the complaint "as though Plaintiff had selected the additional ground for eviction 'the defendant breached the condition of the lease described below for which re-entry is specified.' " Thereafter, both parties proceeded solely under the lease violation theory. Thus, any argument pursuant to the statutory provision is not before this Court.

duty to consider other factors other than whether Defendant met the criteria for lease termination.

The trial court denied plaintiff's request to evict defendant, concluding that federal law required plaintiff to exercise discretion in making its decision. Plaintiff appealed the trial court's order to the Court of Appeals.

The Court of Appeals affirmed the decision of the trial court on a different basis, concluding that plaintiff must prove that evicting defendant was not unconscionable under North Carolina law. *E. Carolina Reg'l Hous. Auth. v. Lofton*, ___ N.C. App. ___, 767 S.E.2d 63 (2014). We allowed plaintiff's petition for discretionary review.

Contrary to the Court of Appeals' decision, the equitable defense of unconscionability is not a consideration in summary ejectment proceedings. To prevail in a summary ejectment proceeding under North Carolina law, a landlord must establish by a preponderance of the evidence that a tenant breached the lease. *See* N.C.G.S. §§ 42-26(a)(2), -30 (2015); *see also Durham Hosiery Mill Ltd. P'ship v. Morris*, 217 N.C. App. 590, 593, 720 S.E.2d 426, 428 (2011) ("A tenant may be removed in a summary ejectment action when the tenant has 'done or omitted any act by which, according to the stipulations of his lease, his estate has ceased.' " (quoting N.C.G.S. § 42-26(a)(2) (2009)); *id.* at 595-96, 720 S.E.2d at 429 (rejecting as "clearly *dicta*" the language in *Morris v. Austraw*, 269 N.C. 218, 223, 152 S.E.2d 155, 159 (1967), perceived as requiring an unconscionability analysis).

E. Carolina Reg'l Hous. Auth. v. Lofton

*Opinion of the Court*

If the lease at issue related to a private landlord–tenant relationship, our analysis would end here. When the government is the landlord, however, certain duties arise under applicable law. Federal statutes and regulations govern federally subsidized public housing and require public housing authorities to incorporate certain provisions into their leases. In its role as the final forum for review of government housing decisions, the Court is not to second-guess or replace plaintiff's discretionary decisions but to ensure procedural and substantive compliance with the federal statutory framework. *See Charlotte Hous. Auth. v. Patterson*, 120 N.C. App. 552, 555, 464 S.E.2d 68, 71 (1995) ("In federally subsidized housing cases, the court decides whether applicable rules and regulations have been followed, and whether termination of the lease is permissible." (citation omitted)). "A trial court's findings of fact are binding on appeal if supported by competent evidence." *Durham Hosiery*, 217 N.C. App. at 592, 720 S.E.2d at 427 (citation omitted). The trial court found that plaintiff, believing Smith's drug-related activity mandated defendant's eviction, did not exercise discretion. Thus, the sole remaining question is whether under federal law plaintiff was required to exercise some degree of discretion in its eviction decision.

Federally subsidized public housing is a safety net designed to provide homes to those least able to afford other housing options. Like everyone else, individuals who live in federally subsidized housing are entitled to be free from "any criminal activity that threatens the health, safety, or right to peaceful enjoyment of the premises." 42 U.S.C. § 1437d(*l*)(6) (2012); *see also* N.C. Const. art. I, § 1 ("We hold it

E. Carolina Reg'l Hous. Auth. v. Lofton

*Opinion of the Court*

to be self-evident that all persons are created equal; that they are endowed by their Creator with certain inalienable rights; that among these are life, liberty, the enjoyment of the fruits of their own labor, and the pursuit of happiness."); *The Declaration of Independence* para. 2 (U.S. 1776) ("We hold these truths to be self-evident, that all men are created equal, that they are endowed by their Creator with certain unalienable Rights, that among these are Life, Liberty and the pursuit of Happiness."). Recognizing the devastating effect of illegal drugs in public housing, Congress adopted the Public Housing Drug Elimination Act of 1988, Pub. L. No. 100-690, § 5122, 102 Stat. 4181, 4301 (codified as amended at 42 U.S.C. § 11901 (2012)). The Act requires leases to include language granting public housing authorities broad discretion to terminate leases to ensure that the housing is "decent, safe, and free from illegal drugs." 42 U.S.C. § 11901(1).

Under federal law, public housing leases must "allow the agency . . . to terminate the tenancy," *id.* § 13662(a) (2012), for any household member "who . . . is illegally using a controlled substance," *id.* § 13662(a)(1), or whose drug abuse "interfere[s] with the health, safety, or right to peaceful enjoyment of the premises by other residents," *id.* § 13662(a)(2). The lease must prohibit not only household members from engaging in drug-related activity but also forbid any guest or person under a tenant's control from engaging in such activity. *Id.* § 1437d(*l*)(6) ("Each public housing agency shall utilize leases which . . . provide that . . . any drug-related criminal activity on or off such premises, engaged in by a public housing tenant, any

member of the tenant's household, or any guest or other person under the tenant's control, shall be cause for termination of tenancy[.]"); 24 C.F.R. § 966.4(f)(12)(i), (ii) (2016); Public Housing Lease and Grievance Procedures, 56 Fed. Reg. 51,560, 51,567 (Oct. 11, 1991). Violation of these provisions "shall be cause for termination of tenancy" as determined by the local public housing authority in its discretion. 42 U.S.C. § 1437d(*l*)(6); *see* 24 C.F.R. § 966.4(*l*)(5)(vii)(B) (When terminating a tenancy for drug-related criminal activity, the housing authority "may consider all circumstances relevant to a particular case.").

In the seminal case interpreting public housing law, *Department of Housing & Urban Development v. Rucker*, 535 U.S. 125, 122 S. Ct. 1230, 152 L. Ed. 2d 258 (2002), some tenants questioned the extent of agency officials' authority to evict residents from public housing. The Supreme Court of the United States held that a housing authority could evict a tenant and her family as a result of a guest's illegal activity even when the tenant was unaware of the activity and had no reason to suspect it. *Id.* at 136, 122 S. Ct. at 1236, 152 L. Ed. 2d at 270; *see also id.* at 131, 122 S. Ct. at 1234, 152 L. Ed. 2d at 267 ("[T]he plain language of § 1437d(*l*)(6) requires leases that grant public housing authorities the discretion to terminate tenancy without regard to the tenant's knowledge of the drug-related criminal activity.").

The decision in *Rucker*, however, emphasizes the importance of housing officials exercising discretion before pursuing these "no-fault" evictions. *Id.* at 134-36, 122 S. Ct. at 1235-36, 152 L. Ed. 2d at 268-70. In particular,

> [t]he statute does not *require* the eviction of any tenant who violated the lease provision.  Instead, it entrusts that decision to the local public housing authorities, who are in the best position to take account of, among other things, the degree to which the housing project suffers from "rampant drug-related or violent crime," "the seriousness of the offending action," and "the extent to which the leaseholder has . . . taken all reasonable steps to prevent or mitigate the offending action."  [A] local housing authority may sometimes evict a tenant who had no knowledge of the drug-related activity.

*Id*. at 133-34, 122 S. Ct. at 1235, 152 L. Ed. 2d at 268 (first alteration in original) (quoting 42 U.S.C. § 11901(2) (1994 & Supp. V) and Screening and Eviction for Drug Abuse and Other Criminal Activity, 66 Fed. Reg. 28,776, 28,803 (May 24, 2001)).  Congress thus "afford[ed] local public housing authorities the discretion to conduct no-fault evictions for drug-related crime," *id*. at 135, 122 S. Ct. at 1236, 152 L. Ed. 2d at 269 (citation omitted), by "requir[ing] lease terms that give local public housing authorities the discretion to terminate the lease," *id*. at 136, 122 S. Ct. at 1236, 152 L. Ed. 2d at 270.  *See also id*. at 130, 122 S. Ct. at 1233, 152 L. Ed. 2d at 266 (holding that 42 U.S.C. § 1437d(*l*)(6) "unambiguously requires lease terms that vest local public housing authorities with the discretion to evict tenants for the drug-related activity of . . . guests").  In sum, while a public housing authority may conduct no-fault evictions, it must exercise discretion in doing so.

Shortly after the decision in *Rucker*, the federal Department of Housing and Urban Development (HUD) described the discretion given to public housing authorities to seek no-fault evictions based upon the actions of third parties.  While

E. Carolina Reg'l Hous. Auth. v. Lofton

*Opinion of the Court*

characterizing the power as "a strong tool," HUD emphasized that no-fault evictions "should be applied responsibly." Letter from Mel Martinez, Sec'y, U.S. Dep't of Hous. & Urban Dev., to Pub. Hous. Dirs. (Apr. 16, 2002). Moreover, HUD directed that enforcement of the clause be "left to the discretion of each public housing agency . . . to be guided by compassion and common sense," with eviction as "the last option explored." *Id.* Shortly thereafter, HUD reiterated that *Rucker* "made it clear both that the lease provision gives PHAs [Public Housing Authorities] such authority and that PHAs are not required to evict an entire household—or, for that matter, anyone—every time a violation of the lease clause occurs." Letter from Michael M. Liu, Assistant Sec'y, U.S. Dep't of Hous. & Urban Dev., to Pub. Hous. Dirs. (June 6, 2002). Instead, HUD explained, "PHAs are in the best position to determine what lease enforcement policy will most appropriately serve the statutory interest of protecting the welfare of the entire tenant population." *Id.* Accordingly, HUD "urge[d]" PHAs, when making an ultimate decision, "to consider a wide range of factors" and to "balance them against the competing policy interests that support the eviction of the entire household." *Id.*; *see also* 24 C.F.R. § 966.4(*l*)(5)(vii)(B).

Discretion "involve[s] an exercise of judgment and choice, not an implementation of a hard-and-fast rule exercisable at one's own will or judgment." *Discretionary*, *Black's Law Dictionary* (10th ed. 2014). Here the trial court concluded that plaintiff failed to exercise its discretion before seeking defendant's eviction. The trial court found that plaintiff was unaware of its responsibility to exercise discretion;

E. Carolina Reg'l Hous. Auth. v. Lofton

*Opinion of the Court*

therefore, plaintiff only considered whether the facts permitted eviction, thereby omitting the critical step of determining whether eviction should occur in this case. Neither the federal statutory framework nor plaintiff's lease or policies compel eviction; they only delineate the grounds or cause for eviction. Though the decision to evict lies in plaintiff's discretion, which courts will not second-guess, plaintiff does not exercise discretion when it is unaware it has a choice. *See Hous. Auth. of Covington v. Turner*, 295 S.W.3d 123, 129 (Ky. Ct. App. 2009) (Moore, J., concurring) ("[D]iscretion must be exercised, rather than a blind application of the law because 42 U.S.C. § 1437d(*l*)(6) does not *require* evictions.").

While we affirm the outcome of the Court of Appeals' decision, namely that summary ejectment was inappropriate in this case, we do so for a different reason. We hold that plaintiff failed to exercise its discretion as required by federal law before pursuing defendant's eviction. Accordingly, we modify and affirm the decision of that court.

MODIFIED AND AFFIRMED.

Justice ERVIN did not participate in the consideration or decision of this case.