IN THE SUPREME COURT OF NORTH CAROLINA

2021-NCSC-16

No. 385PA19

Filed 12 March 2021

RALEIGH HOUSING AUTHORITY

v.

PATRICIA WINSTON

On discretionary review pursuant to N.C.G.S. § 7A-31 of a unanimous decision of the Court of Appeals, 267 N.C. App. 419 (2019), affirming an order entered on 26 June 2018 by Judge Michael Denning in District Court, Wake County. Heard in the Supreme Court on 12 January 2021.

*The Francis Law Firm, PLLC, by Ruth Sheehan and Charles T. Francis and Alan D. Woodlief, Jr., for plaintiff-appellee.*

*Robinson, Bradshaw & Hinson, P.A., by Erik R. Zimmerman and Ethan R. White; and Legal Aid of North Carolina, Inc., by Andrew Cogdell, Celia Pistolis, Darren Chester, Daniel J. Dore, and Thomas Holderness, for defendant-appellant.*

*Jack Holtzman, Emily Turner, Elizabeth Myerholtz, Lisa Grafstein, and Lisa Nesbitt for Disability Rights North Carolina, North Carolina Justice Center, North Carolina Housing Coalition, North Carolina Coalition to End Homelessness, North Carolina Coalition Against Domestic Violence, amici curiae.*

BARRINGER, Justice.

¶ 1      This case presents us with the question of whether a notice of lease termination provided to a tenant of public housing "state[d] specific grounds for termination." 24

C.F.R. § 966.4(*l*)(3)(ii) (2019).[1] Plaintiff Raleigh Housing Authority (RHA) provided a notice of lease termination to defendant Patricia Winston (Winston) that notified her of RHA's intent to terminate her lease due to "Inappropriate Conduct – Multiple Complaints" and quoted provision 9(F) of the lease agreement. Because the notice of lease termination failed to provide Winston with the factors necessary for her to be on notice of RHA's justification for the termination of her lease on this record, we reverse the decision of the Court of Appeals.

## I.    Background

¶ 2        RHA filed a complaint in summary ejectment against Winston on 13 April 2018 in District Court, Wake County. RHA's complaint alleged that the lease period had ended, and Winston was holding over after the end of the lease. In her answer, Winston denied these allegations and raised as a defense that the notice of lease termination "d[id] not state with specificity defendant's alleged 'Inappropriate Conduct' " and "violates federal lease notice requirements" citing 24 C.F.R. § 966.4(*l*)(3)(ii). The lease agreement between Winston and RHA stated that "[t]he notice of termination to the Resident shall state reason(s) for the termination." Following a summary ejectment trial in April 2018 and a hearing on RHA's motion

---

[1] While Winston cites court decisions from other jurisdictions addressing other regulations under Title 24, "Housing and Urban Development," Winston has not argued that any regulation addressing written notice applies other than 24 C.F.R. § 966.4(*l*)(3)(ii) (2019).

for eviction on 25 June 2018,[2] the trial court entered an order allowing immediate possession of the apartment to RHA. In the order allowing immediate possession, the trial court made the following findings of fact:[3]

> 3. On April 17, 2017 [t]he Defendant entered into a renewable twelve-month lease ("Lease") with the Plaintiff for a one-bedroom apartment (Apartment #206) at 150 Gas Light Creek Court, Raleigh, N.C. 27601.
>
> 4. Between October 2017 and November 2017, Plaintiff received three (3) written complaints from other tenants in the apartment complex about noise disturbances coming from Defendant's apartment[.]
>
> 5. After the first written complaint[,] Plaintiff issued the Defendant a written warning indicating to the Defendant that a complaint had been filed against her for noise disturbance.
>
> 6. On or about December 1, 2017, after receiving a third written complaint from a tenant in the apartment complex, Plaintiff sent a letter to Defendant indicating that her lease would be terminated on December 31, 2017 as a result of violating Paragraph 9(f) of the Lease.
>
> 7. Violating Paragraph 9(f) is a material breach of the Lease.
>
> 8. After issuing the lease termination notice, Plaintiff had an informal meeting with the Defendant to discuss why her lease was being terminated.

---

[2] The trial court's order allowing immediate possession indicates that the trial court is addressing RHA's motion for eviction. However, the trial court stated at the hearing that the trial court was hearing an appeal of a summary ejectment.

[3] Winston has not challenged any of the trial court's findings of fact on appeal to this Court. The trial court's findings of fact are therefore binding on appeal. *See, e.g., Mussa v. Palmer-Mussa*, 366 N.C. 185, 191 (2012).

9.      Plaintiff rescinded the lease termination letter after the informal meeting, as the Defendant made the Plaintiff aware that Defendant had been a victim of domestic violence.

10.     The [c]ourt takes judicial notice of the North Carolina Court Information System Electronic-Filing for Domestic violence complaints and notes that on December 5th, 2017, *after* RHA had hand delivered and sent via Certified mail return receipt requested the first notice of Lease Termination to the Defendant, Defendant file[d] for an Ex-Parte Domestic Violence Protective Order (DVPO) against [another individual].

11.     Defendant's request for an Ex-Parte DVPO was DENIED on December 5th, 2017, and, notable her reasons for requesting the order were:

> He deserve [sic] my neighbor my landlord was going to put me out because she didn't want here and I didn't want he there but if he keep coming I we have to leave.

12.     Defendant did not obtain a DVPO against [the other individual] until the return hearing on December 18th, at that hearing [the other individual] was not present and the Defendant's allegations had changed substantially:

> defendant repeatedly screams profanity at plaintiff and threatens to assault her; repeatedly verbal abuse for 17 years has caused her substantial emotional distress[.]

13.     At the time of the first warning Defendant indicated to Plaintiff that she intended to get a no trespass order against [the other individual].

14.     On or about February 5, 2018, the Plaintiff received another noise complaint against the Defendant.

15.     On or about February 13, 2018, the Plaintiff issued a second notice of lease termination to the [Defendant].

16.     On or about February 17, 2018, the Defendant wrote a memo to the Plaintiff acknowledging the noise disturbances and alleging that the disturbances were a result of [the other individual's] three friends.

17.     Just after receiving the 2nd notice to terminate her lease, Defendant sent a letter to the RHA indicating she intended to get a no trespass order for the other three friends of [the other individual]. Defendant has neither received a no trespass order for any of the individuals nor has she made any affirmative efforts to do so.

18.     Per the Defendant's rights, she had a grievance hearing on or about March 6, 2018 with an independent third party. The grievance hearing affirmed the Plaintiff's decision to terminate the Defendant's lease.

¶ 3     From these facts, the trial court concluded that "[d]efendant has . . . been given adequate notice of her violations of Paragraph 9(f) of the Lease."

¶ 4     The Court of Appeals concluded that the trial court did not err by reaching this conclusion. *Raleigh Hous. Auth. v. Winston*, 267 N.C. App. 419, 424 (2019). The Court of Appeals held that "the Notice of Lease Termination to Defendant was in compliance with the governing federal regulation" because it "identified—and quoted—the specific provision serving as the basis for Defendant's lease termination." *Id.*

¶ 5     Winston sought discretionary review in this Court, asking this Court to consider "[w]hether a reference to a provision of a lease alone satisfies a public housing authority's obligation under federal law to 'state specific grounds' for terminating the lease." Winston also sought discretionary review concerning the

business records exception to hearsay. This Court allowed the petition for discretionary review on both issues presented. We reverse the decision of the Court of Appeals on the first issue presented and remand to the trial court for dismissal. Accordingly, we decline to address the evidentiary issue concerning the business records exception and express no opinion concerning the manner in which the Court of Appeals resolved that issue.

## II.  Standard of Review

"In federally subsidized housing cases, the court decides whether applicable rules and regulations have been followed, and whether termination of the lease is permissible." *E. Carolina Reg'l Hous. Auth. v. Lofton*, 238 N.C. App. 42, 46 (2014) (quoting *Charlotte Hous. Auth. v. Patterson,* 120 N.C. App. 552, 555 (1995)), *aff'd as modified,* 369 N.C. 8 (2016). The construction of an administrative regulation is a question of law. *United States v. Moriello*, 980 F.3d 924, 930 (4th Cir. 2020). "On appeal, '[c]onclusions of law drawn by the trial court from its findings of fact are reviewable *de novo.*'" *In re Estate of Skinner*, 370 N.C. 126, 140 (2017) (alteration in original) (quoting *In re Foreclosure of Bass*, 366 N.C. 464, 467 (2013)); *see also Moriello*, 980 F.3d at 930.

## III.  Analysis

At issue in this case is the construction of the term "specific grounds" in 24 C.F.R. § 966.4(*l*)(3)(ii). Section 966.4 of Title 24 of the Code of Federal Regulations

states:

> § 966.4 Lease requirements.
>
> A lease shall be entered into between the PHA and each tenant of a dwelling unit which shall contain the provisions described hereinafter.
>
> . . . .
>
> (l) *Termination of tenancy and eviction—*
>
> . . . .
>
> (3) *Lease termination notice.*
>
> . . . .
>
> (ii) The notice of lease termination to the tenant shall state specific grounds for termination, and shall inform the tenant of the tenant's right to make such reply as the tenant may wish. The notice shall also inform the tenant of the right (pursuant to § 966.4(m)) to examine PHA documents directly relevant to the termination or eviction. When the PHA is required to afford the tenant the opportunity for a grievance hearing, the notice shall also inform the tenant of the tenant's right to request a hearing in accordance with the PHA's grievance procedure.

24 C.F.R. § 966.4.

"In resolving issues of statutory construction, we look first to the language of the statute itself." *Walker v. Bd. of Trs. of the N.C. Loc. Gov'tal Emps.' Ret. Sys.*, 348 N.C. 63, 65 (1998) (quoting *Hieb v. Lowery*, 344 N.C. 403, 409 (1996)); *see also Radford*, 734 F.3d at 293 (citing *Chase Bank USA, N.A. v. McCoy*, 562 U.S. 195, 204 (2011)). When the term in the statute is unambiguous, the term "should be

understood in accordance with its plain meaning." *Fid. Bank v. N.C. Dep't of Revenue*, 370 N.C. 10, 20 (2017); *see also Moriello*, 980 F.3d at 934 ("If the language of the regulation 'has a plain and ordinary meaning, courts need look no further and should apply the regulation as it is written.' " (quoting *Gilbert v. Residential Funding LLC*, 678 F.3d 271, 276 (4th Cir. 2012)). To determine the plain meaning, this Court has looked to dictionaries as a guide. *Midrex Techs., Inc. v. N.C. Dep't of Revenue*, 369 N.C. 250, 258 (2016).

¶ 9 In 24 C.F.R. § 966.4(*l*)(3)(ii), the adjective "specific" modifies the noun "grounds." "Grounds" is defined as "factors forming a basis for action or the justification for a belief." *Grounds*, *New Oxford American Dictionary* (3rd ed. 2010); *see also Ground*, *Merriam-Webster's Collegiate Dictionary* (11th ed. 2007) (defining "ground" as "a basis for belief, action, or argument"); *Ground*, *Black's Law Dictionary* (11th ed. 2019) (defining "ground" as "[t]he reason or point that something (as a legal claim or argument) relies on for validity"). Meanwhile, "specific" is defined as "clearly defined or identified." *Specific*, *New Oxford American Dictionary* (3rd ed. 2010); *see also Specific*, *Merriam-Webster's Collegiate Dictionary* (11th ed. 2007) (defining "specific" as "free from ambiguity").

¶ 10 The plain meaning of "specific grounds" therefore requires RHA to clearly identify the factors forming the basis for termination of the lease. Applying the unambiguous plain meaning of "specific grounds" leads us to conclude that RHA

failed to comply with 24 C.F.R. § 966.4(*l*)(3)(ii).

The relevant portion of the notice of termination states:

> You are hereby notified that the Housing Authority intends to terminate your Lease to the premises at **150-206 Gas Light Creek Court** under the provisions in your Lease Agreement and pursuant to Raleigh Housing Authority's Grievance Procedure due to the following:
>
> Inappropriate Conduct – Multiple Complaints
>
> 9. **OBLIGATIONS OF RESIDENT**
>    F.   To conduct himself/herself and cause other persons who are on the premises with the Resident's consent to conduct themselves in a manner which will not disturb the neighbors' peaceful enjoyment of their accommodations.

As evidenced above, the notice of termination identifies provision 9(F) of the lease agreement, providing the contractual basis for termination of the lease. However, the notice of termination lacks any reference to specific conduct by Winston. RHA contends the "language [in the notice of termination] put . . . Winston on notice that her alleged lease violation was based on disturbing her neighbors." Yet, a tenant's disturbance of her neighbors encompasses a broad range of conduct, may involve the tenant or other persons on the premises, and, as relevant to this case, may include conduct for which the landlord may not evict the tenant as a matter of law. Specifically, as part of the Violence Against Women Act, ch. 322, 108 Stat. 1902 (1994), Congress has prohibited covered housing programs from terminating participation in or evicting a tenant from housing "on the basis that the . . . tenant is or has been a victim of domestic violence, dating violence, sexual assault, or stalking," 34 U.S.C. § 12491(b)(1), and mandates that

> [a]n incident of actual or threatened domestic violence,

dating violence, sexual assault, or stalking shall not be construed as—

(A) a serious or repeated violation of a lease for housing assisted under a covered housing program by the victim or threatened victim of such incident; or

(B) good cause for terminating the assistance, tenancy, or occupancy rights to housing assisted under a covered housing program of the victim or threatened victim of such incident.

34 U.S.C. § 12491(b)(2); *see also* N.C.G.S. § 42-42.2 (2019) (prohibiting termination of tenancy or "retaliat[ion] in the rental of a dwelling based substantially on: (i) the tenant, applicant, or a household member's status as a victim of domestic violence, sexual assault, or stalking"). The additional statement in the notice of termination— "Inappropriate Conduct – Multiple Complaints"—is similarly broad and vague and subject to the same concerns as provision 9(F) of the lease agreement.

¶ 13     As a whole, the notice of termination is indeterminate. Winston cannot determine from the notice of termination how RHA contends she breached provision 9(F) of the lease agreement, and none of the trial court's factual findings support a conclusion otherwise. In the notice of termination, RHA failed to clearly identify the factors forming the basis for termination of the lease—the specific grounds for termination. Winston lacked adequate notice of the basis for the termination of lease.

## IV.     Conclusion

¶ 14     We reverse the decision of the Court of Appeals. In this case, the identification and quotation of the specific provision serving as the basis for the landlord's lease

termination does not comply with 24 C.F.R. § 966.4(*l*)(3)(ii) because the factors forming the basis for termination of the lease cannot be discerned. While a quotation of the violated lease provisions in certain factual circumstances may provide "specific grounds for termination," *cf. Roanoke Chowan Reg'l Hous. Auth. v. Vaughan*, 81 N.C. App. 354, 358 (1986) (holding that the notice of termination provided the specific grounds for termination even though it incorrectly cited Section 7 of the lease agreement because the statement—"by allowing individuals not named on the lease to reside in your apartment"—"put defendants on notice regarding the specific lease provision deemed to have been violated"), this issue and such a notice is not before us. We hold that on this record, the notice of termination was fatally deficient. Accordingly, we reverse the Court of Appeals' decision concerning compliance with 24 C.F.R. § 966.4(*l*)(3)(ii) and remand to the Court of Appeals for remand to the trial court for dismissal consistent with this opinion.

REVERSED AND REMANDED.